APPENDIX: FACTUAL BACKGROUND

Virden ran to represent District 10 on the City Council in November 2020. VC ¶ 7. Prior to the November 2020 general election, Virden raised approximately $95,000 in contributions from individual supporters. VC ¶ 29. Out of seven candidates competing in the general (including the incumbent, Alison Alter), Virden finished with 11,637 votes, the second-highest vote total, forcing a runoff with Alter. VC ¶¶ 7, 29. Virden then raised approximately $124,000 from individual supporters before the December 15, 2020 runoff election. VC ¶ 29. In that runoff, Virden again received over 11,000 votes, but narrowly lost by approximately 51%-49%. VC ¶ 7.

Virden will run for City office in the November 2022 general election. VC ¶ 9. She will run for mayor or, if her council district is on the ballot, that option would be available as well. VC ¶ 10. She has clearly stated this intention both privately and publicly, including in her verified complaint and in a press release that she distributed through her campaign Facebook account and to a campaign email list. Appx. 2 (Virden supplemental decl.) ¶ 2. Regardless of which particular office she declares for, she wants to communicate her ideas and positions on current issues now, rather than waiting until the City's arbitrary deadline allows her to accept campaign contributions. VC ¶ 22.

Virden wants to pay to distribute advertisements in which she would speak *as a candidate*, stating her position and asking for votes in 2020. VC 22, 33; Appx. 2, ¶ 3. If an injunction is entered, when she solicits contributions, she will describe her positions on current issues and ask for monetary support to help spread her message on such issues as part of her candidacy. Appx. 2, ¶ 6. The advertisements will not only state her position on the issues, but will state that she is running for office and ask for listeners/readers to vote for her in November 2022 to champion policies for a better Austin. Appx. 2, ¶¶ 3.

1

Mtn for Inj Appx 1

She will also retain some of the funds received and begin building her campaign account for use closer to election day. Appx. 2, ¶ 5.

Virden states directly in her verified complaint that she would already be soliciting and accepting funds to execute these plans but for the new blackout period. VC ¶ 17. She has not done so only because Austin prohibits it. VC ¶ 84. Here, she attaches statements from two supporters who verify that, but for the blackout period, they would contribute immediately to her campaign, both to support her immediate speech and to help her build her campaign account. Appx. 3.

It is important that Virden be able to fundraise and pay for advertisements as soon as possible. In particular, she desires to advertise her positions on several of the measures on the May 1 ballot. As examples, she *supports* the "Camping Ban" Proposition B, to *restore* commonsense public "camping" and panhandling laws. She *opposes* the "Strong Mayor" Proposition F, which would replace Austin's city manager-council form of government and give the Mayor "veto" power over City Council actions and unilateral power to hire and fire department heads. Appx. 2, ¶ 7. Early voting for those measures begins on April 19. *Id.* She seeks an injunction in sufficient time to allow her to raise funds and produce and distribute ads at least while early voting in the May 1 election is being conducted, and ideally before April 19. *Id.* The more funds she can raise, the more she can plan and execute in terms of advertisements. *Id.* ¶ 8.

In addition to those desired advertisements regarding the May 1 election, Virden explained the importance of fundraising early to build momentum and the necessary resources for a 2022 campaign. Appx. 2, ¶ 5.

Mtn for Inj Appx 1