UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JENNIFER VIRDEN, § | |
| Plaintiff, § | |
| § | |
| § | Civil Case No. 1:21-cv-00271-RP |
| v. § | |
| § | |
| CITY OF AUSTIN, TEXAS, § | |
| Defendant. § | |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Virden replies as follows.

## I. Virden Has Standing.

Austin's challenge to Virden's standing fails for several reasons. Virden affirmed her desire to immediately raise campaign funds in order to both (i) fund timely advertisements speaking as a candidate on current issues and (ii) retain some of the received funds for use closer to election day. Appx. 2, ¶¶ 3, 5, 6. Austin does not frontally address these allegations or the legal principles involved. Instead, Austin brings an indirect attack, arguing that Virden lacks standing to challenge the blackout because she (i) has not yet declared the *specific office* she will run for; and (ii) "has not appointed a campaign treasurer for any 2022 city race," which Austin characterizes as "the necessary first step under the law that allows her to begin soliciting and accepting campaign contributions *for that office*[.]"  Resp. at 8 (emphasis added). These arguments reflect a misapprehension of Texas law, and approach an outright misrepresentation of the City's own law. Once that is understood, the City's arguments are not only unavailing, but, in fact, reinforce Virden's present injury.

### a. Virden is presently injured by the blackout provision.

Austin has not, and cannot, refute Virden's unequivocal statements that she "will run for City office in the November 2022 elections," whether that is for mayor or to represent her council district, and that, but for the new blackout, she "would have already been soliciting and accepting campaign contributions … and depositing them into her campaign account." Verified Compl. ("VC") ¶¶ 10, 17, 35. These are not statements of intent to campaign at some indeterminate point in the future; they are statements of present intent to campaign right now, and to begin building her campaign account right now. Her present plans are not contingent on which specific office she

ultimately competes for; either way, she demands to exercise her right to speak now, and to solicit and accept campaign contributions to support that speech. VC ¶¶ 17-27. When Virden's motion was filed, three supporters had verified their intent to contribute immediately, and more have now done so. Appx. 4, ¶ 7 (Virden's Second Suppl. Decl., attached hereto). Virden has self-censored—withholding actual solicitations and refusing to accept contributions—solely due to the blackout provision. VC ¶¶ 17, 23, 84.

Virden's standing to bring a pre-enforcement First Amendment claim is clear under these circumstances. *Justice v. Hosemann*, 771 F.3d 285, 291 (5th Cir. 2014) (internal quotations and citations omitted) (standing established where group of "like-minded friends and neighbors" "contend that they would have pooled their resources" for political advertisements, but did not do so "because of what they view as Mississippi's onerous and complicated disclosure requirements"); *In re Cao*, 619 F.3d 410, 421 (5th Cir. 2010) (en banc). Austin's attempt to stretch the holdings from *Zimmerman* (regarding standing to challenge the aggregate limit) and *Koschnick v. Doyle*, 2011 WL 1238185 (W.D. Wisc. Mar. 31, 2011) (Resp. at 9-10), is unavailing. The Fifth Circuit held that Zimmerman lacked standing to challenge the (then) $36,000 limit on aggregate contributions from out-of-Austin contributors because he had not yet raised funds from such persons in any aggregate amount even approaching the limit. 881 F.3d at 389-90. *Koshnick* is inapposite because the law at issue there did not prevent Koshnick from immediate fundraising. It was not a direct prohibition on Koshnick at all; he sought to challenge a public financing scheme where the alleged injury would only materialize if, in a future election, the plaintiff were to face an opponent who opted for public financing, and then circumstances were such that the matching-funds provision were triggered. 2011 WL 1238185, *5. Here, by contrast,

Virden would immediately accept the contributions that multiple persons have verified intent to immediately make.

The constitutional injury is only compounded with each lost opportunity. When Virden filed this lawsuit, she had approximately $3,800 left in her campaign account. VC ¶ 32. Since then, she has spent about $2,205 on radio ads that began on April 19 and will run through April 27 and May 1. Appx. 4 ¶ 2-3. But for the blackout, the radio ads and the email would have included a solicitation for contributions through her campaign website. *Id.* ¶ 4. With respect to these modest communications Virden was able to fund with leftover funds, the blackout forced her to change her message, foregoing the solicitations. *Id.* But it also limited the scope of the efforts she has been able to undertake thus far, because she has not been able to raise more money. *Id.* ¶ 3. Further, she has reserved radio spots to run on election day, May 1, 2021, and the content of those messages will depend on whether this Court enters an injunction. Virden has prepared two scripts. If the blackout is enjoined (**by at least noon on Friday, April 30**), the ads will solicit contributions. If there is no injunction, Virden will not be able to solicit contributions. *Id.* ¶ 5.

### b. Austin's blackout—not Texas law—prohibits Virden's activity.

Contrary to Austin's argument, Texas law does not require Virden to file a new campaign treasurer appointment form before she can raise funds under state law.

Texas Election Code § 253.031(a) provides that "*[a] candidate* may not knowingly accept a campaign contribution or make or authorize a campaign expenditure at a time when a campaign treasurer appointment for the candidate is not in effect" (emphasis added). This statute is no hindrance to Virden because she has a campaign treasurer appointment in effect, on file with Austin. The City's argument—that this form

is not effective until Virden decides and declares in a new appointment form the specific office she will seek in 2022—is not merely unsupported, but actually *contradicted*, by title 15 of the Election Code, as well as Austin's own Code of Ordinances.

Chapter 252 of the Election Code governs campaign treasurer appointments, including their required contents and period of effectiveness. It requires "[e]ach candidate" to "appoint a campaign treasurer as provided by this chapter." Tex. Elec. Code § 252.001. Every appointment must identify a campaign treasurer and his or her contact information, and, in the case of an appointment by a candidate, the candidate's telephone number and a statement acknowledging the Texas nepotism law. *Id.* §§ 252.002, .0032. Section 252.011 provides that an appointment "takes effect at the time it is filed with the [requisite] authority" (here, the City), and "*continues in effect until terminated*" (emphasis added). Another provision spells out how to terminate an appointment. *Id.* § 252.0131. The City acknowledges that Virden's campaign treasurer appointment has not been terminated.

The City's argument that an appointment that has not been terminated nonetheless ceases to be effective under § 253.031(a), such that any contributions or expenditures are deemed illegal, is refuted by the Election Code and Austin law. The Election Code expressly acknowledges that one can be a "candidate" without identifying the specific office to be sought. Tex. Elec. Code § 251.001(1)(E) (listing examples of "affirmative action" that will render one a "candidate" for purposes of title 15, including "the making of a public announcement of a definite intent to run for public office in a particular election, *regardless of whether the specific office is mentioned in the announcement*") (emphasis added). A rule promulgated by the Texas Ethics Commission includes among the required contents of an appointment "the office sought

Virden/Reply ISO Mtn. for Prelim. Inj.    5

by the candidate making the appointment," but only "if known." 1 Tex. Admin. Code § 20.205(3). The appointment form itself—including Virden's actual form, which the City attached to its response—indicates that specifying the office is requested only "if known." ECF 10-1.

The obvious conclusion from all of this is that the requirement to appoint a treasurer is directed to facilitate compliance with the candidate's reporting obligations under state law, including by providing contact information to regulators and the public. The requirement to identify the office sought is expressly conditional. It necessarily follows that one is a "candidate"—and can and must file a valid appointment form—without designating the "office sought" if the specific office is not known.[1] And if the office sought changes, the candidate does not (contrary to Austin's representation) file a new form, but files a form for an amendment that changes only the information that is different. The Ethics Commission's instructions state that "[i]f the office has changed, please enter the office you now seek, if known."[2]

The Texas Election Code, therefore, does not condition fundraising on filing a campaign treasurer appointment identifying the specific office sought. To the contrary, by requiring candidates to appoint treasurers and assume reporting obligations even before the office sought (or the new office sought) is known, title 15 recognizes that candidates can and will fundraise before formally declaring the office sought. Austin's own Code refutes the City's argument here, because it recognizes that political contributions received by a person while they were a candidate for a different City of

---

[1] The effect of setting up the statutes in this manner is that one cannot avoid statutory reporting obligations while collecting campaign contributions simply by declining to formally decide which particular office he or she seeks.

[2] Tex. Ethics Com'n, *Form ACTA-Instruction Guide* (updated April 2, 2021), https://www.ethics.state.tx.us/data/forms/coh/ACTA_ins.pdf (last visited April 22, 2021).

Austin office (or even, to some extent, contributions received while a candidate for a non-City office) can be used for a subsequent campaign for a different City of Austin office. Code § 2-2-55. The City's present argument—that one cannot legally fundraise for a specific office unless that specific office is identified in the campaign treasurer appointment form at the time the fundraising occurs—is disingenuous litigation posturing that is refuted by Texas and Austin law.

Setting all of that aside, even if Austin's mis-statement of Texas and its own law were correct, the purported effect of the treasurer appointment statute *still* would not affect the appropriateness of an injunction against the blackout. Virden would be entitled to relief even if some other legal obstacle yet remained in the way of her plans. *Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 432 (5th Cir. 2014).

## II.   Irreparable Harm

A law prohibiting one from accepting campaign contributions that one would otherwise accept imposes irreparable harm. *Texans for Free Enterprise v. Tex. Ethics Com'n*, 732 F.3d 535, 539 (5th Cir. 2013) ("TFE's ability to speak is undoubtedly limited when it cannot raise money to pay for speech. Consistent with our precedents … TFE has established irreparable harm."). "[T]he loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Id.* (internal citations and punctuation omitted).

Virden is irreparably harmed anew every day she cannot raise funds, and every opportunity that passes without her having the funds to distribute her desired communications. But it is important to note—because the City conspicuously avoids discussion of it—that the desire to speak regarding the May 1 elections is not the only

motivation for Virden to immediately fundraise.  She also has stated clearly that she wants to retain funds to build her campaign account for use later.  She has the right to do that whether the City believes it wise or not, and every day that passes without an injunction represents further injury to this interest, distinct from any speech regarding the May 1 elections.

Additionally, Austin cannot avoid reckoning with its speech-restrictive law by suggesting that Virden should just set up a new PAC to speak about the measures May 1. *Cf*. Resp. at 7 n.4.  Austin's argument here is self-refuting.  The City suggests that it is "hard to find any First Amendment harm" from the blackout because Virden could "establish a special-purpose political action committee, solicit contributions to it, and run ads" regarding the measures, "just not as a candidate for city elective office." *Id*. The most fundamental problem with this rationale is that it would force Virden to change her message so that she is speaking other than as a candidate.  The Fifth Circuit rejected an identical argument raised by Texas in *TFE*, 732 F.3d at 539 (rejecting suggestion that ban on corporate contributions to PACs is not harmful because the corporations "may speak themselves or create their own independent PACs").  *Accord Catholic Leadership*, 764 F.3d at 427.  Virden wants to speak as a candidate, including by directing listeners and readers to her campaign website (not the site of a PAC), and with the statement that the communications are paid for by "Jennifer for Austin," a reference to her campaign.  She also wants to solicit contributions *to her campaign* in these messages.  The City cannot avoid defense of its law by suggesting candidates simply change the content of their message.  "Such notions run afoul of "the fundamental rule of protection under the First Amendment, that a speaker has the

Virden/Reply ISO Mtn. for Prelim. Inj.        8

autonomy to choose the content of his own message." *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.,* 515 U.S. 557, 573 (1995).

Contrary to Austin's argument (Resp. at 3-7), the fact that Virden did not sue the City during her first campaign does not obviate the irreparable harm visited by Austin's government-imposed time-out on core political association. The premise underlying this argument—that a new political candidate must challenge every potentially unconstitutional law in her first campaign or forfeit the ability to seek an injunction in any future race—is inconsistent with the nature of political issues and campaigns and is wrong as a matter of First Amendment law.

Political issues, opportunities, and the motivations of candidates are not static, of course, but change—often dramatically and suddenly—from cycle to cycle and even from week to week. Both the Supreme Court and the Fifth Circuit (among other courts) have rejected government arguments that the injury imposed by temporal restrictions on political activity is somehow lessened because political actors should be able to plan around them in advance. *Wisc. Right to Life, Inc. v. FEC*, 551 U.S. 449, 462 (2007) (plurality op.) ("But groups ... cannot predict what issues will be matters of public concern[.] In these cases, WRTL had no way of knowing well in advance that it would want to run ads on judicial filibusters."); *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 431 (5th Cir. 2014) ("Texas's suggestion overlooks the practical reality that oftentimes few observers know the critical issues in an election (and the candidates' position on those issues) until just days before."). Austin's argument here runs contrary to this principle. A new candidate like Virden might not file a lawsuit in their first race for any number of reasons, including, *e.g.*, not having the money to do so or not having a lawyer available to do so on contingency. Moreover, the Fifth Circuit has recognized

that losing an election can spark interest in litigation to remove a legal barrier that the plaintiff perceives as having harmed their performance. *Thomas v. Bryant*, 938 F.3d 134, 149 (5th Cir.), *reh'g en banc granted,* 939 F.3d 629 (5th Cir. 2019), and *on reh'g en banc sub nom. Thomas v. Reeves*, 961 F.3d 800 (5th Cir. 2020).

While Austin seems to complain that Virden's fundraising success in 2020 undermines her argument against the temporal ban on association, Virden takes her uncommon proficiency in fundraising—and very narrow loss—in 2020 as an indication that, by starting earlier, she can put herself in an even better position. In any event, Virden has no need for Austin's political advice. She has the fundamental right to raise money for her campaign immediately and she is injured every day the law is not enjoined.

Austin's authority is not on point. The cases dealing with non-compete agreements or other business disputes are factually distinguishable. Neither are cases seeking changes to district lines shortly before an election helpful to the City; Virden challenges a restriction on pure speech and an injunction would not require Austin to adjust anything at all about how any election is conducted from an administrative standpoint.

### III. Virden Is Likely to Succeed on the Merits

Virden clearly articulated why the new blackout period (i) fails to address the government's interest in targeting *quid pro quo* corruption or its appearance, and (ii) is insufficiently tailored even if it did address the government's interest. Mtn. for Prelim. Inj. at 5-17. Because Virden challenges a restriction on her speech and association, the burden shifts to the City to defend its law, even at the preliminary injunction stage. *See id.* at 4 (citing authority). Austin's halting response on the likelihood of success element

(Resp. at 11-14) reflects that, in fact, there is not much the City can say to defend this law. What little it *has* said is based on a misreading of *Catholic Leadership* supplemented by the kind of pure speculation and conjecture that can never satisfy the government's burden in the First Amendment context.

The City inexplicably suggests that *Catholic Leadership* may support an anti-circumvention justification for the blackout. In fact, it expressly rejected the state's anti-circumvention argument. 764 F.3d at 433. The rest of the response is pure speculation about bundling activity which is hard to follow, but even so, to the extent the City can eventually articulate a threat from bundling, it can simply address it in bundling regulations. A blanket ban on all contributions from all sources for 36 months does not address any articulated threat and is insufficiently tailored even if it did. Mtn. at 15.

## IV. Public Interest

The City has not even attempted to articulate any harm it would suffer if enjoined from enforcing the blackout, other than its amorphous reference to an interest in enforcing city laws. Resp. at 10-11. But "[i]njunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012). For this reason, if Virden is likely to succeed on the merits—and she is—then the public interest favors an injunction. *Id.*; *TFE*, 732 F.3d at 539 (granting injunction against state campaign finance statute, rejecting State's "vague" reference to public interest). Austin's authorities here do not arise in the First Amendment context and are not to the contrary anyway. *See Planned Parenthood of Great Teas Surgical Health Svcs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2019) (public interest supported the state *where the state was also likely to succeed on the merits*).

Respectfully submitted,

*/s/ Jerad Najvar*
NAJVAR LAW FIRM PLLC
Jerad Wayne Najvar
Texas Bar No. 24068079
jerad@najvarlaw.com
Austin M.B. Whatley
Texas Bar No. 24104681
austin@najvarlaw.com
2180 North Loop West, Suite 255
Houston, TX 77018
Phone:	(281) 404-4696
Facsimile:	(281) 582-4138
jerad@najvarlaw.com
*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document, and any accompanying exhibits and proposed order, were served via CM/ECF on April 22, 2021, as follows:

Renea Hicks
Counsel for City of Austin

*/s/ Jerad Najvar*
Jerad Najvar