IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JENNIFER VIRDEN, | § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | 1:21-CV-271-RP |
| CITY OF AUSTIN, TEXAS, | | |
| Defendant. | | |

**ORDER**

Before the Court is Defendant City of Austin, Texas's ("City" or "Austin") Motion to Dismiss. (Dkt. 14). Plaintiff Jennifer Virden ("Virden") filed a response, the City replied, and Virden filed a sur-reply with leave from the Court. (Dkts. 17, 18, 20; Text Order, 5/20/21). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be denied

**I. BACKGROUND**

Virden is a politician in Austin who ran for City Council in 2020 and lost. (*See* Compl., Dkt. 1, at 6–7). When she filed this lawsuit in March 2021, she had less than $3800 remaining in her campaign account. (*Id.* at 7). The Court understands she now has about $1500 left after spending some of her campaign funds on radio ads that ran starting on April 19, 2021 through the May 1, 2021 election. (Resp. Mot. Dismiss, Dkt. 17, at 8). Virden wants to raise funds to pay for additional ads "discussing her [future] candidacy and her position on other issues as they arise." (Compl., Dkt. 1, at 7). Specifically, Virden "will run for City office in the November 2022 elections. She will either run for mayor to represent her council district, if her district is on the 2022 ballot. The particular council district in which Virden resides, and whether such district will appear on the November 2022 ballot, will not be known until the redistricting plan in finalized in November 2021." (Compl.,

1

Dkt. 1, at 4). Whether she runs for mayor or city council, Virden "desires to solicit and accept campaign contributions now." (*Id.*). "Building a campaign account early is important not just because of the things that Virden can do with the money in her campaign when she decides to spend it, but because demonstrating fundraising success early serves as a statement of the level of support a candidate has, and demonstrates viability." (*Id.* at 7).

Due to the City's campaign contribution restrictions, Virden cannot raise funds now. In her complaint, Virden alleges that the "City's Code of Ordinances provides that a candidate may only raise funds for an election during an authorized campaign period, and the period for a general election begins 'the 365th day before the date of the general election.'" (Compl., Dkt. 1, at 2) (quoting Code §§ 2-2-7(B), (G)) (the "blackout period"). Previously, fundraising was limited to the six months before a general election and that period was extended to one year after a lawsuit. (*Id.*). Virden claims that incumbents can continuously "promote their agenda and propagate their messages by virtue of their official positions . . . including by means of free media coverage" for the four years between elections whereas Virden, and other would-be challengers, are silenced for three out of the four years by the City's blackout period. (*Id.* at 1–2).

On April 1, 2021, Virden filed a motion for preliminary injunction. (Mot. Prelim. Injun., Dkt. 5). The City filed a response on April 15, 2021. (Resp. Mot. Prelim. Injunc., Dkt. 10). On April 19, 2021, the Court set a telephone conference for the following week on April 28, 2021. (Order, Dkt. 11). After it was set and before it was held, the City filed its motion to dismiss on April 26, 2021. (Mot. Dismiss, Dkt. 14). On the same day, Virden filed her reply in support of her motion for preliminary injunction. (Reply Mot. Prelim. Injunc., Dkt. 13). At the telephone conference, the Court and the parties discussed a path forward. Since it was not possible to have a preliminary injunction hearing before the May 1, 2021 election and the Court would want the benefit of Virden's response to the motion to dismiss before deciding it, Virden agreed to file a response to the motion to

dismiss, which the Court would promptly consider. (*See* Minute Entry, Dkt. 16). Virden filed her response to the motion to dismiss on May 10, 2021, (Resp. Mot. Dismiss, Dkt. 17), and the City filed its reply on May 17, 2021, (Reply Mot. Dismiss, Dkt. 18). On May 20, 2021, Virden filed an unopposed motion for leave to file a sur-reply, which the Court granted the same day. (Sur-reply, Dkt. 20; Text Order, 5/20/21). With the briefing complete on the motion to dismiss, the Court will now consider the City's motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

## III. DISCUSSION

Federal courts cannot consider the merits of a case unless it "presents an 'actual controversy,' as required by Art. III of the Constitution and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201." *Steffel v. Thompson*, 415 U.S. 452, 458 (1974). "Justiciability concerns not only the

standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." *Renne v. Geary*, 501 U.S. 312, 320 (1991); *see also LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005). "[A] plaintiff must show: (1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." *Houston Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 617 (5th Cir. 2007) (citation omitted). An injury in fact is an invasion of a legally protected interest which is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The City moves to dismiss Virden's claims because she lacks standing to pursue them and they are not ripe. (Mot. Dismiss, Dkt. 14, at 1). Noting that ripeness and standing overlap in that the injury must be imminent rather than conjectural,[1] the City attacks Virden's standing and the ripeness of her claims together, focusing initially on whether Virden has demonstrated an intent to run for office. The City describes Virden's declarations of intent as "barren." (*Id.* at 5). According to the City, there are up to seven possible offices that Virden "has held in reserve without making a commitment as to any of them." (*Id.* at 6). When the City filed its motion to dismiss, Virden had not yet filed or updated her campaign treasurer appointment, which the City views as a "necessary first step." (*Id.*). Without agreeing that her previous treasurer appointment was no longer effective or impliedly was ineffective, (*id.* at 11–14), Virden states that she has now filed an amendment to her appointment form, (*id.* at 14–16). On the amendment form, Virden completed "office sought" as "November 2022 Mayor or Council District." (*Id.* at 15; Am. Form, Dkt. 17-3, at 2). In its reply, the City acknowledges that Virden now has a treasurer appointed and posits that the updated treasurer form only cured "one aspect of her ripeness problem" and encourages the Court, in its discretion, to

---

[1] *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) ("Ripeness often overlaps with standing, 'most notably in the shared requirement that the injury be imminent rather than conjectural or hypothetical.'").

4

dismiss her claims "as unripe for prudential, rather than Article III, reasons." (Reply, Dkt. 18, at 9–10). The Court declines the City's invitation and finds that Article III ripeness is no longer disputed by the City.[2]

The interrelated question of whether Virden has established standing remains. Virden has verified her intent to run—either for City Council or mayor depending on the outcome of redistricting—by announcing it in her complaint and in a press release published on Facebook on March 25, 2021 and to her campaign email list on March 26, 2021. (Resp., Dkt. 17, at 2–3). As the City concedes—and attempts to use to condemn Virden's standing—Virden cannot necessarily identify the specific office she will seek because, among other things, Austin will go through a city council redistricting process later this year. (Reply, Dkt. 18, at 1–4). The City characterizes Virden's actions as therefore insufficient and hypothetical—if she ends up seeking an office for which there is no incumbent, then the power of incumbency is moot and she would not have suffered an injury-in-fact—whereas Virden believes she has (1) taken all affirmative steps possible to show her intent to run for office, including submitting the amendment for her appointment of a campaign treasurer and (2) "affirmed her desire to immediately raise campaign funds." (Resp., Dkt. 17, at 3).

The City relies on *Mississippi State Democratic Party v. Barbour* to support its proposition that Virden's declaration of her intent to run is insufficient to get over the standing hurdle. 529 F.3d 538 (5th Cir. 2008); (Mot. Dismiss, Dkt. 14, at 5). In that case, the Fifth Circuit held that the Mississippi State Democratic Party suffered no threat of imminent injury "[w]ithout concrete plans or any objective evidence to demonstrate a 'serious interest in a closed primary." *Id.* at 546. Virden distinguishes *Mississippi State* as a case about a "state's regulatory regime governing the conduct of

---

[2] Because the City admits that Virden has an amended treasurer appointment on file that remedied her potential Article III ripeness problem, the Court need not weigh in on the parties' dispute as to whether Virden's existing treasurer appointment form was effective and whether the amendment was a necessary step to prove intent.

party primary elections." (Resp., Dkt. 17, at 9). But, as Virden concedes, the Mississippi State Democratic Party also asserted an injury to its associational rights under the First Amendment. (*See id.*). Regardless, Virden has done more than the Mississippi State Democratic Party, which wanted a closed primary but had merely set out its intent in court pleading. *Mississippi State Democratic Party*, 529 F.3d at 545. Here, the record demonstrates that Virden has concrete plans and has presented objective evidence demonstrating her serious intent. Virden has announced her intent to run for office, filed an amendment for her appointment of a campaign treasurer, affirmed her desire to immediately raise money, and submitted verifications from supporters who say they would contribute money to her campaign if they could, (Verifications, Dkt. 17-1, 1–16).

The City also attacks Virden's standing as a plaintiff who faces a "prospective injury in connection with a campaign finance rule." (Mot. Dismiss, Dkt. 14, at 7). The City argues that Virden has not met her burden of demonstrating that her injury is "real, immediate, and direct." (*Id.*) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). The City compares Virden's allegations to those of a plaintiff in a Western District of Wisconsin case. (*Id.* 7–8). There, the plaintiff, a former and potentially future candidate for the Wisconsin Supreme Court, challenged the constitutionality of a state law the provided "supplemental, matching funds to candidates electing public financing, which [were] triggered when the disbursements of a privately-financed candidate . . . exceeds a certain level." *Koschnick v. Doyle*, No. 09-CV-767-WMC, 2011 WL 1238185, at *1 (W.D. Wis. Mar. 31, 2011). The plaintiff's basis for standing relied on three allegations: "(1) he was previously a privately-financed candidate for a seat on the Wisconsin Supreme Court; (2) he intends to proceed as a privately-financed candidate for a seat sometime in the future; and (3) several of the Act's provisions would chill his political speech as a candidate or that of his supporters." *Id.* at *4. The Court found that the plaintiff alleged his intent "at some future time to run again" and "did not declare that he would spend or raise enough money to trigger the matching funds provision." *Id.*

The Court thus concluded that the plaintiff relied on "one too many 'if-then' statements to establish a threatened injury that is real, immediate and direct." *Id.* at *5. While this Court is not obliged to follow an out-of-circuit case, the Court also does not find that *Koschnick* negatively impacts Virden's showing of standing. Virden has taken concrete steps beyond what the *Koschnick* plaintiff did; for example, she has publicly declared her candidacy in a press release and filed an amendment to her treasurer appointment form.

Finally, in its reply, the City contends that because Virden does not know whether she will run against an incumbent, she cannot allege more than a hypothetical injury, leaving "only her broad averment that furthering her campaign . . . will be made more difficult if the temporal restrictions remain in place." (Reply, Dkt. 18, at 3–4). The City categorizes that possible injury as a First Amendment Associational Claim, not a speech claim, because she challenges a "a contribution limit . . . not an expenditure limit." (*Id.* at 5). The City continues that a contribution claim focuses on the contributor not the candidate, and thus Virden's First Amendment right of association is not implicated. (*Id.*). In her sur-reply, Virden responds that even if the City is right about the divide between expressive and associational elements of a campaign contribution, Virden has standing as a prospective contribution recipient. (Sur-reply, Dkt. 20, at 2).

In *Gordon v. City of Houston, Tex.*, 79 F. Supp. 3d 676 (S.D. Tex. 2015), the Southern District of Texas considered a similar case. Brent Trebor Gordon sued the City of Houston and the mayor alleging that a "temporal ban on soliciting and receiving contributions imposed on candidates for city elective office . . . 'stifles core political activity and prevents candidates from raising funds to run effective campaigns.'" *Id.* at 678 (quoting the plaintiff's complaint). Like Virden, Gordon planned to run for city office and, due to Houston's fundraising ban, could not solicit and accept contributions to support his campaign prior to a certain date. *Id.* at 682. Following *Catholic Leadership Coalition of Texas v. Reisman*, 764 F.3d 409, 423 (5th Cir. 2014), the Southern District found that Houston's

7

arguments raised in its motion to dismiss—that Gordon failed to demonstrate standing "because the First Amendment does not protect a candidate's right to receive contributions"—to be meritless. *Id.* at 683. That court found that Gordon showed actual chilling of his political speech, not just a subjective chill. *Id.* The City regards Judge Lake's reasoning as "suspect," and relies, again, on *Mississippi State Democratic Party*, which the Court already determined does not foreclose Virden's claims. (Reply, Dkt. 18, at 7–8).

Without wedding itself to *Gordon*'s reasoning, the Court finds that Virden has established an injury-in-fact under these facts by showing an intent to engage in actions that are "arguably affected with a constitutional interest," an ordinance arguably prohibits those actions, and a credible threat of prosecution. *See Babbitt v. United Farm Workers National Union*, 442 U.S. 289 (1979). The Court is satisfied that, for the purposes of standing, Virden established both an intent to obtain campaign contributions and use those funds to convey her message to voters and that the City's ordinance restricts her ability to engage in those activities under a threat of prosecution. *See Cath. Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 423 (5th Cir. 2014) ("[B]oth the contributing and the contributed-to party have sufficient injuries-in-fact to challenge campaign finance restrictions."). The Court thus finds that Virden has established standing to pursue her claims.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that the City of Austin's Motion to Dismiss, (Dkt. 14), is **DENIED**.

**SIGNED** on May 21, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE