IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JENNIFER VIRDEN, | § | |
| Plaintiff, | § § § | |
| v. | § | 1:21-CV-271-RP |
| CITY OF AUSTIN, TEXAS, | § § § | |
| Defendant. | § § | |

## ORDER

Before the Court is Plaintiff Jennifer Virden's ("Virden") motion for preliminary injunction. (Dkt. 5). Defendant City of Austin, Texas's ("City" or "Austin") responded, (Dkt. 10), Virden filed a reply, (Dkt. 13), and both parties filed supplemental briefing the day before the hearing, (Virden Supp., Dkt. 32; City Supp., Dkt. 31). The Court held a hearing on Virden's preliminary injunction motion on June 25, 2021. (Minute Entry, Dkt. 33). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be denied.

## I. BACKGROUND

Virden is a politician in Austin who ran for city council in 2020, finished in the top two of seven candidates, and lost in the runoff. (*See* Compl., Dkt. 1, at 3, 6–7). When she filed this lawsuit in March 2021, she had less than $3800 remaining in her campaign account. (*Id.* at 7). The Court understands she recently had about $1500 left after spending some of her campaign funds on radio ads that ran from April 19, 2021 to May 1, 2021 election, with May 2, 2021 being an election day in Austin. (Resp. Mot. Dismiss, Dkt. 17, at 8). Virden wants to raise funds to pay for additional ads "discussing her [future] candidacy and her position on other issues as they arise." (Compl., Dkt. 1, at 7). Specifically, Virden "will run for City office in the November 2022 elections. She will either run for mayor to represent her council district, if her district is on the 2022 ballot. The particular council

1

district in which Virden resides, and whether such district will appear on the November 2022 ballot, will not be known until the redistricting plan in finalized in November 2021." (*Id.* at 4). Since she filed her complaint, Virden amended her Appointment of a Campaign Treasurer by a Candidate form twice. Initially, she amended it on May 6, 2021 to show she was seeking to run for mayor or city council in November 2022. (First Am. Form, Dkt. 17-3). More recently, Virden updated it to reflect that she intends to run for mayor of Austin. (Second Am. Form, Dkt. 32-1). To support her candidacy, Virden "desires to solicit and accept campaign contributions now." (*Id.*). "Building a campaign account early is important not just because of the things that Virden can do with the money in her campaign when she decides to spend it, but because demonstrating fundraising success early serves as a statement of the level of support a candidate has, and demonstrates viability." (*Id.* at 7).

Per the challenged city ordinance, Virden cannot raise funds now. In her complaint, Virden alleges that the "City's Code of Ordinances provides that a candidate may only raise funds for an election during an authorized campaign period, and the period for a general election begins 'the 365th day before the date of the general election.'" (Compl., Dkt. 1, at 2) (quoting Code §§ 2-2-7(B), (G)) (the "Ordinance").[1] Previously, fundraising was limited to the six months before a general election and that period was extended to one year after a lawsuit brought by a different plaintiff in this Court. (*Id.*; *see Zimmerman v. City of Austin*, 1:15-cv-628-LY, Findings of Fact and Conclusions of Law, Dkt. 67). Virden claims that incumbents can continuously "promote their agenda and propagate their messages by virtue of their official positions . . . including by means of free media

---

[1] In her preliminary injunction motion, Virden states "[t]o the extent that Charter art. III, § 8(F)(4) is also read to prohibit fundraising by an 'unsuccessful candidate' for a forthcoming election cycle, then it, and Code § 2-2-7(E), also infringe Virden's rights." (Mot. Prelim. Inj., Dkt. 5, at 7). Throughout her briefing and during the hearing, Virden focused on Section 2-2-7. While Virden may not be precluded from attacking the constitutionality of the charter provision in conjunction with Section 2-2-7 as this case progresses, for the purposes of this motion, the Court, like the parties, considers only the provisions of Section 2-2-7 in its analysis.

2

coverage" for the four years between elections whereas Virden, and other would-be challengers, are silenced for three out of the four years by the City's blackout period. (Compl., Dkt. 1, 1–2). The City points out that Virden's characterization of the Ordinance does not correspond to how the Ordinance has affected her ability to raise funds. Rather than it being a three-year blackout period, it effectively is an 11-month blackout period because Virden ran for election in 2020 and was able to raise through December 2020, when she participated in the runoff, and can raise funds again starting in November 2021, which will be one year before the next general election in November 2022.

After her loss on December 15, 2020, Virden waited to sue the City until March 25, 2021. (Compl., Dkt. 1). On April 1, 2021, Virden filed a motion for preliminary injunction. (Mot. Prelim. Inj., Dkt. 5). The City filed a response on April 15, 2021. (Resp. Mot. Prelim. Inj., Dkt. 10). On April 19, 2021, the Court set a telephone conference for the following week on April 28, 2021. (Order, Dkt. 11). After it was set and before it was held, the City filed its motion to dismiss on April 26, 2021. (Mot. Dismiss, Dkt. 14). On the same day, Virden filed her reply in support of her motion for preliminary injunction. (Reply Mot. Prelim. Inj., Dkt. 13). At the telephone conference on April 28, 2021, the Court and the parties discussed a path forward. Since it was not possible to have a preliminary injunction hearing before the May 1, 2021 election and the Court would want the benefit of Virden's response to the motion to dismiss before deciding it, Virden agreed to file a response to the motion to dismiss, which the Court would promptly consider. (*See* Minute Entry, Dkt. 16). Virden filed her response to the motion to dismiss on May 10, 2021, (Resp. Mot. Dismiss, Dkt. 17), and the City filed its reply on May 17, 2021, (Reply Mot. Dismiss, Dkt. 18). On May 20, 2021, Virden filed an unopposed motion for leave to file a sur-reply, which the Court granted the same day. (Sur-reply, Dkt. 20; Text Order, 5/20/21). The Court denied the City's motion to dismiss on May 21, 2021.

After issuing the order denying the City's motion to dismiss, the Court set this case again for a conference to discuss the motion for preliminary injunction and find a hearing date. (Order, Dkt. 22). The next day, Virden filed a motion for a temporary restraining order at 6:13 p.m. (Mot. TRO, Dkt. 23). The Court denied Virden's motion the following day as duplicative of the relief sought in her motion for a preliminary injunction, which the Court and the parties were working on diligently. (Order, Dkt. 24). The Court held the conference and set the hearing for June 25, 2021. (Minute Entry, Dkt. 26; Order, Dkt. 27). Per the Court's direction during the conference, the parties worked together to develop a plan for the hearing and filed a joint report on June 10, 2021. (Dkt. 29). In that joint report, the parties stated that Virden would be presented for a brief one-hour deposition by the City on June 17, 2021 with limited re-direct examination and re-cross examination. (*Id.* at 1–2). The parties also elected to submit short supplements to the Court the day before the hearing. (Virden Supp., Dkt. 32; City Supp., Dkt. 31). The Court held the hearing on Virden's preliminary injunction motion on June 25, 2021. (Minute Entry, Dkt. 33).

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). A movant cannot be granted a preliminary injunction unless it can establish that it will suffer irreparable harm without an injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

4

### III. DISCUSSION

**A. Irreparable Harm**

Virden's request for preliminary injunctive relief fails on a lack of showing of irreparable harm. In her motion for preliminary injunction, Virden focuses almost entirely on establishing a likelihood of success on the merits. (Mot., Dkt. 5, at 10–22). In one paragraph, Virden argues she will suffer irreparable harm without an injunction because she would "lose[] irreplaceable time for soliciting funds to (i) fund desired immediate speech regarding current issues and (ii) begin amassing as much as possible for her 2022 campaign."[2] (*Id.* at 22). The City responds that her delay in pursuing injunctive relief negates her claim of irreparable harm. (Resp., Dkt. 10, at 5–7). The City contends that the "code provision she seeks to have thrown out in an emergency ruling has been on the books for roughly three and a half years." (*Id.* at 5). During that time, Virden ran a campaign for city council that concluded in December 2020 in which she raised money and garnered votes, although she was ultimately unsuccessful. (*Id.*). From the inception of her last campaign, the City argues, Virden "faced the same temporal restraint on fundraising that she now claims irreparably harms her to the point that she wants immediate, emergency relief. Yet never during all of that time did she seek invalidation of [the Ordinance's] 365-day fundraising restriction." (*Id.*). The Court agrees that Virden appears to have waited to challenge the Ordinance until she lost in 2020 despite the fact that, based on her complaint, the Ordinance was violating her First Amendment rights during her previous campaign. Depending on how it's calculated, Virden waited months, if not years, to seek injunctive relief, yet she now complains to the Court that the injury "is already being realized—and compounded—each day that passes without relief." (Virden Supp., Dkt. 32, at 3). On

---

[2] She further states that those who would contribute to her campaign are denied the right of political association, (Mot., Dkt. 5, at 22); however, those individuals are not co-plaintiffs in this case, and any violation of their rights is not before this Court.

these facts, Virden's delay negates a finding that Virden has demonstrated she will suffer irreparable harm absent a preliminary injunction.

In her reply, Virden attempts to find another path to irreparable harm by arguing that a "law prohibiting one from accepting campaign contributions that one would otherwise accept imposes irreparable harm." (Reply, Dkt. 13, at 7). The Court cannot accept such a sweeping argument. Not all restrictions on campaign contributions automatically result in irreparable harm to a candidate. As Virden admitted in the hearing, there are restrictions on campaign contributions that are constitutionally tailored and permissible. (Hearing, Minute Entry, Dkt. 33) (Virden's counsel noted that the City of Houston has a likely constitutional ban on contributions for those seeking contracts when an individual is bidding for a city contract).

Virden supports her argument by relying on *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535 (5th Cir. 2013). Texans for Free Enterprise ("TFE"), a political committee that does not contribute to candidates but spends funds to support its own speech in favor or against candidates, was prohibited by Texas election laws from accepting contributions from corporations because corporations could not make unauthorized political contributions. *Id.* at 536. TFE sued the Texas Ethics Commission, seeking an injunction and declaration that portions of the election code violated the First Amendment as applied to TFE. *Id.* The Fifth Circuit briefly considered whether TFE made a showing of irreparable harm and pointed to this circuit's precedent that "the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Id.* at 539 (quotation marks and brackets omitted). The *Texans for Free Enterprise* Court concluded that "TFE's ability to speak is undoubtedly limited when it cannot raise money to pay for speech" and that TFE established irreparable harm. *Id.*

The First Amendment injury alleged by TFE is not the First Amendment injury alleged in this case, and many aspects distinguish the contribution restriction challenged there and here. For

6

example, in *Texans for Free Enterprise*, TFE was a political committee, not an individual candidate for office like Virden. TFE was challenging state election provisions that not only restricted its ability to accept contributions but also the ability of donor corporations from making contributions. Virden is challenging a city ordinance that lacks the corollary restriction on donors from making contributions during the blackout period—donors can make contributions, but candidates may not accept them. Put simply, this case is not about state election provisions governing corporate contributions to political committees. Absent directly applicable Fifth Circuit or Supreme Court authority, this Court will not expand this circuit's jurisprudence to find, at the stage of a preliminary injunction, that Virden's speech likely is being unconstitutionally prohibited by the City and therefore she has established irreparable injury as a matter of law. Based on current law, Virden's claim is not the assertion of a core First Amendment right; rather, she may be asserting a "derivative right of association" as a candidate for office "wanting to receive contributions and not as a contributor wanting to make them." (City Supp., Dkt. 31, at 7). Without more evidence of irreparable injury and given her delay in seeking injunctive relief, this Court cannot find that Virden has established that she will suffer irreparable harm and therefore Virden is not entitled to a preliminary injunction.

**B. Balance of the Equities**

This Court's holding is further supported by *Benisek v. Lamone*, 138 S. Ct. 1942 (2018). In *Benisek*, the district court denied the plaintiffs' motion for a preliminary injunction. 138 S. Ct. at 1943. The plaintiffs were Republican voters who alleged that a Maryland congressional district was gerrymandered in 2011 "for the purpose of retaliating against them for their political views." *Id.* The Supreme Court affirmed, on different grounds, holding that the plaintiffs had failed to show "reasonable diligence" in seeking the preliminary injunction because they waited six years after the congressional map was adopted and over three years after the first complaint was filed. *Id.* at 1944. While the timeline in *Benisek* was longer than here, the Supreme Court's concerns apply with equal

force. The challenged Ordinance in this case has been in effect for several years. (*See* Compl., Dkt. 1, at 2). Virden ran for office—with the Ordinance in effect—in 2020. (*Id.* at 3). She lost, in a runoff election, on December 15, 2020. (*Id.*). She decided to run for office again "immediately after the runoff on December 15th." (Virden Depo., Dkt. 31-1, at 5). She knew "right away" that she would be running in 2022. (*Id.* at 9). In addition to her lack of a showing that she will suffer irreparable harm, Virden's delay in filing her suit and seeking a preliminary injunction tilts the balance of the equities towards the City.

### C. Likelihood of Success on the Merits

Finally, although the Court need not reach the question of whether Virden has shown a likelihood of success on the merits, the Court addresses the City's argument that enjoining the Ordinance before the City has a meaningful opportunity to develop the record is well taken within the facts and procedural background of this case. (*See* City Supp., Dkt. 31, at 9–11). Virden delayed filing a complaint and requesting a preliminary injunction, but once filed, sought immediate review and indicated that she might file a petition for mandamus if this Court were unable to rule on her request as quickly as Virden wished. As set out in previous orders, at each juncture, the Court and the parties met and came to an understanding about the way forward, with the Court doing its best to fairly balance the equities between the parties and to proceed diligently with its rulings in this case. (*See* Order Denying City's Mot. Dismiss, Dkt. 21, at 2–3; Order Denying Virden's TRO, Dkt. 24, at 1–2).

The Court agrees with the City that it would be premature for this Court to issue an injunction at this time. In this instance, because there is no immediately impending election or deadline, for example, and because Virden delayed seeking injunctive relief, this Court finds that it would be premature to enjoin the Ordinance, even preliminarily, as likely being unconstitutional without allowing the City a meaningful opportunity to develop merits evidence. This decision

8

conforms with what was done by the Western District of Texas previously in the *Zimmerman* case. There, the plaintiff seeking to invalidate the previous iteration of the Ordinance requested a preliminary injunction, (Mot. Prelim. Inj., 1:15-cv-628-LY, Dkt. 2), but the Court instead conducted a two-day bench trial. The preliminary injunction motion was filed on July 28, 2015, (*id.*), and the Court conducted the bench trial on December 14-15, 2015, (Minute Entry, 1:15-cv-628-LY, Dkts. 39, 42). From the time the preliminary injunction motion was filed until the bench trial began, the parties had months to identify evidence and witnesses and then two days in court to present their evidence and arguments to the Court. The Court in turn had the benefit of the evidence marshaled by the parties and additional post-trial briefing to make its determination about the constitutionality of the Ordinance, among other issues. (*See* Findings of Fact and Conclusions of Law, 1:15-cv-628-LY, Dkt. 67). For this additional reason, the Court will deny Virden's motion for preliminary injunction as unjustified and premature the context of this case.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Virden's Motion for Preliminary Injunction, (Dkt. 5), is **DENIED**.

**SIGNED** on July 1, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE