UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JENNIFER VIRDEN, *et al.*, | : | |
|     *Plaintiffs*, | : | |
| | : | |
| vs. | : | No. 1:21cv00271-RP |
| | : | |
| CITY OF AUSTIN, | : | |
|     *Defendant*. | : | |
| _____ | : | |

**DEFENDANT CITY OF AUSTIN'S MOTION FOR SUMMARY JUDGMENT**

Defendant City of Austin moves the Court for summary judgment under Fed. R. Civ. Proc. 56(a) against Plaintiffs Jennifer Virden and William Clark. Discovery is complete, and Plaintiffs' claim against the temporal fundraising rule that City Ordinance No. 20171005-029 (MSJ Exh. 1) added to the City Code should be denied, and their case dismissed. Part IV, *infra* at 13-24, addresses the legal bases for dismissal. Besides judicially noticeable facts, *see infra* at 4 n.5, the facts not genuinely in dispute supporting the motion are in the exhibits listed in the Appendix, which are incorporated into this motion and discussed in Part II, *infra* at 3-11.[1]

**BACKGROUND: CASE DEVELOPMENTS AND FACTS**

**I.   CASE PROCEEDINGS**

Virden filed her First Amendment suit against the City in March 2021, challenging the City Code prohibition on city council candidates raising campaign funds other than in the one year before a general election. Doc.1. She waited another

---

[1] The list includes an exhibit's number and its short-hand reference. The motion's first reference to a summary judgment exhibit uses its short-hand term and its summary judgment exhibit number "(MSJ Exh. _)." Subsequent references use only the exhibit number.

week, then requested a preliminary injunction to prevent the prohibition's application to the City's 2022 general election. Doc. 5.[2] She rebuffed any suggestion of consolidating emergency relief efforts to accelerate a merits trial, insisting that instead on a hearing on her preliminary injunction motion. Tr. of April 28, 2021, at 5. The Court denied interim relief, finding Virden failed to show irreparable injury and that the balance of equities did not tilt her way. Doc. 34 at 6-8. Instead of pushing for a trial, Virden appealed.

At first, the Fifth Circuit, concluded that she had not shown irreparable injury. *Virden v. City of Austin*, No. 21-50597 (Oct. 26, 2021). But the appeal became moot while Virden's rehearing motion was still pending, because the City fundraising window had opened by operation of law. Virden's appeal was dismissed, and the initial appellate ruling vacated. *Id.* (Jan. 11, 2022).

Since then, Virden has amended her complaint, joining a new plaintiff, Clark. Sec. Am. Compl. (Doc. 57). They challenge the City rule, codified in subsections (B) and (G) of Code § 2-2-7, allowing a candidate to fundraise only during the year immediately before the City general election day. Sec. Am. Compl. ¶¶ 1, 3. The complaint's single count alleges that the restriction facially violates their First Amendment rights; it includes no allegations about as-applied infringements. *Id.* ¶¶ 69-80.

Virden and Clark request declaratory relief that the challenged restriction violates their First Amendment rights facially and as-applied and a permanent

---

[2] Virden also sought a temporary restraining order, which was denied because it was duplicative. Docs. 23, 24.

injunction barring the restriction's enforcement in the future. *Id*. at 18 (¶¶ 1-3).[3]
Their pleading also includes a damages claim, *id*. at 19 (¶ 6), now narrowed to a
request for nominal damages only. *See* Ps' First Am. Discl. (MSJ Exh. 2) at 3 (¶ C);
Virden II Depo. (MSJ Exh. 3) at 116. The City's answer to the second amended
complaint includes an affirmative defense of limitations and an Article III jurisdic-
tional defense. Answer (Doc. 58) ¶¶37, 39.

## II. MATERIAL FACTS NOT GENUINELY IN DISPUTE

### A. Background

#### 1. Events Leading To 2017 Ordinance And Its Operation In Council Elections

For the last quarter century—since 1997—candidates in Austin city elections
have been subject to a city-mandated temporal restriction on campaign fundraising,
limiting the period during which candidates may solicit and accept monetary cam-
paign contributions.[4] For most of this period, by Charter directive, the fundraising

---

[3] They also provisionally request such relief as to Art. III, § 8(F)(4) of the City Charter ("Charter") "to
the extent" it is coextensive with, but independent of, the challenged codified provisions. Sec. Am.
Compl. at 18 (¶ 4). This charter provision is inapplicable here. It is directed at fundraising for cam-
paign debt repayment, is not coextensive with the codified one-year restriction, and does not serve as
an independent restriction on candidate fundraising during the year preceding a general election. Def-
erence is owed this representation. *See infra* at 6 n.9. In the earlier phase of this case, Virden repre-
sented that she was not challenging § 8(F)(4) if it were so interpreted by the City. Tr. of June 25, 2021,
at 20-21; *see also* Virden 5th Cir. Br. (No. 21-50597) (Aug. 25, 2021) at 17 n.5. It thus appears that
Virden and Clark are not pursuing the provisional § 8(F)(4) challenge, and it is not further addressed
in this motion other than to protectively assert that the arguments made in Part IV of this motion also
defeat any claim being maintained against § 8(F)(4).

[4] In 1997, after this Court's order (Judge Sparks presiding), "Austinites for a Little Less Corruption!
a/k/a No More Corruption!" ("Little Less Corruption") successfully placed a campaign finance reform
initiative package on the ballot to amend the Charter, with the temporal restriction part of the pack-
age. Voters overwhelmingly supported the measure, and the temporal restriction was added to the
Charter as Article III, § 8(F)(2). Rios Decl. (MSJ Exh. 4) ¶ 9 & Att. A. It took effect on November 7,
1997. Amend. Note to Charter Art. III, § 8. The next fifteen years brought: a failed 2002 initiative to
repeal the entire 1997 package; measure-added amendments to Article III, § 8 in 2006 unrelated to
the temporal provision; and an unsuccessful 2012 effort to add a 30-day post-election fundraising

window was only open for six months before the general election.[5] More recently—just over five years ago—the City doubled the fundraising period's length to the full year before the election.

But the legal foundation for Austin temporal fundraising restrictions shifted in mid-2016 when this Court (Judge Yeakel presiding) decided a First Amendment challenge to four of the campaign fundraising provisions added by the 1997 Little Less Corruption initiative. *See Zimmerman v. City of Austin*, No. 1:15cv628 (W.D. Tex.). The ruling invalidated the Charter's 365-day fundraising rule. *Id*. Findings of Fact and Conclusions of Law ("FF/CL") at 10-13 (Doc. 67); Final Judgment (Doc. 68).[6] Both sides appealed. *Id*. Doc. 75 (Zimmerman's appeal) (Nov. 14, 2016); Doc. 76 (City's cross-appeal) (Nov. 19, 2016). Virden was aware of the *Zimmerman* litigation during her 2020 campaign. Virden I Depo. (MSJ Exh. 6) at 23.

While the appeals were pending, Austin's city council filled the resulting vacuum. In invalidating subsection (F)(2), the Court had found that, while the City had

---

period for officeholders to Article III, § 8. MSJ Exh. 4 ¶¶ 10-12 & Atts. B-D. Article III, § 8's 180-day temporal restriction remained in place and unchanged throughout.

[5] "[A] candidate for mayor or city council . . . may not solicit or accept a political contribution except during the last 180 days before an election." Charter Art. III, § 8(F)(2). The Court may take judicial notice of city charter and ordinance provisions even if they are not otherwise in the record. *United States v. City of Miami*, 664 F.2d 435, 443 n.16 (5th Cir. 1981) (*en banc*). It also may take notice of its own and appellate court records, *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277 n.33 (5th Cir. 1978), as well as publicly available information on governmental websites, *Swindol v. Aurora Flight Sci. Corp.*, 805 F.3d 516, 518-19 & n.2 (5th Cir. 2015). Under Fed. R. Evid. 201(b) and (c)(2), Austin requests the Court to take judicial notice of the City's charter and ordinances, the Court's own records in the *Zimmerman* case, and certain elections information posted and maintained on the City's official website by the City Clerk.

[6] For the three other challenged provisions in Article III of the Charter, the Court: upheld § 8(A)(1)'s base limit provision, FF/CL at 5-10; left § 8(A)(3)'s aggregate limit provision in place, *id*. at 13-15; and invalidated § 8(F)(3)'s post-election campaign funds disgorgement provision, *id*. at 15-18.

provided "ample evidence" that the six-month restriction did not significantly burden candidate fundraising, it had not satisfied the narrow-tailoring requirement. *Zimmerman* FF/CL at 12 (observing that contribution seven months before an election is more likely to use in a candidate's campaign than *"an 'off-year' contribution more than twelve months before an election"*) (emphasis added).[7] Taking this cue, and acting on Austin's Ethics Review Commission's unanimous recommendation, the council voted 10-1 to amend the city code that doubled the authorized period for campaign fundraising. MSJ Exh. 4 ¶¶ 13-14 & Att. E. The ordinance—Ord. No. 20171005-029—added subsection (B) to Austin City Code § 2-2-7: "The campaign period for a general election begins the 365th day before the date of the general election."

The amendment took effect October 16, 2017, and has continued to govern Austin council elections since. MSJ Exh. 4 ¶ 14. The ordinance's addition of subsection (B) to § 2-2-7 is targeted by Virden and Clark's challenge. MSJ Exh. 3 at 22 (referring to Virden II Depo. Exh. 8); Clark Depo. (MSJ Exh. 5) at 21 (referring to Clark Depo. Exh. 21). The cross-referenced exhibits *are* the challenged ordinance.

The Fifth Circuit subsequently affirmed the Court's judgment in *Zimmerman*. 881 F.3d 378 (5th Cir.), *cert. denied*, 139 S.Ct. 639 (2018). The council's 2017 ordinance played no role in the appellate decision, and the affirmance of the invalidation of the Charter's six-month limitation left the provisions added to the city code in

---

[7] The implication is that off-year contributions raise concerns about whether their purpose is less to support an actual campaign and more to curry favor in a fashion implicating corruption concerns. The preceding paragraph on the same page in the FF/CL had noted that the "vast majority" of contributions come in the three months immediately before the election.

2017 undisturbed. As a result, while general election campaigns[8] for city council positions have been subject to a temporal fundraising restriction for the last twenty-five years, they have been subject to a one-year restriction for the last three general election cycles.[9]

### 2.   The Next General Election

The next city council general election—for Mayor and five council seats—is in November 2024, which means that candidates for those offices may not start raising funds until November 6, 2023. MSJ Exh. 4 ¶¶ 15, 19. Until then, potential council candidates are independently precluded by state law from raising campaign funds unless they have appointed campaign treasurers. Tex. Elec. Code § 253.031(a). None have been appointed yet for the 2024 races, MSJ Exh. 4 ¶ 20.

### B.   The Plaintiffs

### 1.   Virden

#### a.   2020 District 10 Race

Virden has lived in Austin for fifty-five years and at her current residence—in current Council District 10, *id*. ¶ 17—for thirteen years and has had an active

---

[8] Run-off and special elections, with their truncated timelines, are subject to a different temporal fund-raising rule. Campaign fundraising for them begins the day after the general election for run-offs and the day after the council calls a special election. *See* Code § 2-2-7(C)-(D). These fundraising timing rules are not challenged here.

[9] A candidate is only allowed to "raise funds" for an election during an "authorized campaign period." Code § 2-2-7(G). The campaign period for a general election "begins the 365th day before the date of the general election." *Id*. § 2-2-7(B). The City gives § 2-2-7(G)'s phrase "raise funds" the same meaning as Charter Article III, § 8(F)(2)'s phrase "solicit or accept a political contribution." City Mot. to Dism. (Doc. 14) at 4 n.5 (same). This construction is owed deference by the Court. *See, e.g.*, *International Women's Day March Planning Comm. v. City of San Antonio*, 619 F.3d 346, 357 (5th Cir. 2010) (deferring to city counsel's in-court explanation of ordinance's operation); *cf. In re Paxton*, 53 F.4th 303, 309 (5th Cir. 2022) (governmental counsel may judicially present statutory enforcement policy to court).

interest in Austin politics since 2008, when she "started being more politically engaged, paying more attention." MSJ Exh. 3 at 11-12. Her first run for public office was for the District 10 council seat, when she formally entered the race in August 2020 against the incumbent and several other candidates. MSJ Exh. 6 at 21; MSJ Exh. 3 at 17. She came in second in the November 2020 general election, but lost in the December run-off. Goodall Decl. (MSJ Exh. 7) ¶¶ 4-6.

Virden touts her fundraising prowess in that race and believes the challenged code provision, § 2-2-7(B), did not affect it. MSJ Exh. 6 at 23-24; MSJ Exh. 3 at 26. She raised nearly $96,000 in contributions for the District 10 general election, not counting a $50,000 personal loan she made to the campaign. MSJ Exh. 7 ¶ 7. She received nearly $151,000 more in contributions for the run-off. *Id.* ¶ 8.

Later, after the District 10 run-off but before the fundraising window opened for the 2022 council general elections, she repaid herself the $50,000 loan from leftover campaign contributions, still leaving around $19,000 leftover funds for use in another campaign, MSJ Exh. 3 at 86-87—her 2022 run for Austin Mayor.

### b.   2022 Mayoral Race And Afterwards

In February "or so" of 2021, Virden began to envision herself as a 2022 Mayoral candidate, but waited until August 19, 2022, to formally enter the race. MSJ Exh. 3 at 8, 28-29. Five other mayoral candidates were on the ballot, none an incumbent. MSJ Exh. 4 ¶ 6. She finished a distant third in the general election, receiving only 18.4% of the votes cast. *Id.* The top two candidates received 40% and 34.9%, respectively. *Id.*

Despite her pre-loss averment that she "intends" to be a candidate in future elections, Sec. Am. Compl. ¶ 23, Virden has thus far made no post-election public announcements or commitments about a future candidacy. And she has explained that, in running for an office, "you're not committed until you have actually gone to file." MSJ Exh. 3 at 30.

Virden raised less money in contributions for the 2022 Mayor's race than she had for the smaller, both geographically and population-wise, 2020 District 10 race. Two years after raising nearly $247,000 in that race, she raised only about $195,000 for the Mayor's race, even though it was a citywide election held after she became—by her lights, MSJ Exh. 3 at 55, 124, MSJ Exh. 6 at 24-25, 65-66—more widely known politically in the community in 2020.[10]

An example of the fall-off in contributions is traceable to the people she previously told the Court would be contributors to her mayoral campaign, if only their contributions were allowed. In seeking a preliminary injunction, Virden had submitted declarations by ten people that, if the temporal fundraising rule were not in effect, they would contribute certain sums to her mayoral campaign. *See* MSJ Exh. 3 at 57-58 & Virden II Depo. Exh. 20. Yet, as things eventuated—perplexingly so to

---

[10] Tabulations from Virden 2022 campaign finance reports show 185,378.52 received by election day:
 Virden CFR 1/4/22 (MSJ Exh. 8) (Virden II Depo. Exh. 29) (reporting contributions of $46,670.88)
 Virden CFR 7/13/22 (MSJ Exh. 9) (Virden II Depo. Exh. 30) (reporting contributions of $84,506.54)
 Virden CFR 10/11/22 (MSJ Exh. 4 ¶ 21 & Att. F) (reporting contributions of $32,065.66)
 Virden CFR 10/31/22 (MSJ Exh. 4 ¶ 22 & Att. G) ( reporting contributions of $19,855.22)
 Virden CFR 1/17/23 (MSJ Exh. 4 ¶ 23 & Att. H) (reporting contributions of $11,895.22, only $2,280.22 of it received by Nov. 8, 2022)
Not included are $813.27 in contributions leftover from her 2020 District 10 race but used in her 2022 Mayor's race. *See* Virden CFR 7/15/21 (MSJ 3 Exh. 28).

Virden—only two of them ended up actually contributing to her campaign. *Id*. at 79-84.

This time around, though, Virden's personal financial situation had left her feeling "more secure" than in 2020. MSJ Exh. 3 at 18-20. So she increased the amount of money she loaned to her campaign to $300,000, over a hundred thousand dollars more than she raised in contributions for the entire campaign. *Id*. at 96-97. But she waited until December 20, 2021, to make this loan, forty-two days *after* the fundraising window opened. *Id*. Even then, the campaign never dipped into the loan for campaign spending, holding off because it was not yet fully in gear and the timing was not yet right for using it. *Id*.[11] As Virden explained, she did not need to make the loan before the campaign fundraising window opened because she "didn't need to do it sooner." *Id*. at 100. In fact, she never used the loaned money for her campaign. She repaid herself all but $80,000 of it on December 15, 2022, after she lost. MSJ Exh. 4 ¶ 23 & Att. G (reporting $220,000 loan repayment and only a little over $4,000 left in her campaign coffers after the repayment).

Virden has never been the subject of civil or criminal complaints to City authorities, or of any enforcement-related actions by them, about alleged violations of the temporal fundraising restriction she is challenging. *Id*. ¶¶ 24-25.

Virden now ventures to expand her claimed of First Amendment harm beyond the interaction of her mayoral candidacy with the challenged temporal fundraising

---

[11] She did not even use her loan money, or any personal funds, to pay legal expenses for this litigation. Rather, she treated these expenses as campaign expenses and paid $10,000 for them, because she considers this lawsuit to be "politically related" to her campaign. MSJ Exh. 3 at 39-40, 91.

restriction. She avers that she also "desires to be free to make campaign contributions to other candidates for Austin office that those candidates can accept and use more than a year in advance of the relevant election date." Sec. Am. Compl. ¶ 24. Virden has not made campaign contributions to Austin city council candidates in the past. *See* Virden Supp. Resp. to First Interrogs. (MSJ Exh. 11) at 3 (Supp. Resp. No. 6) (failing to identify contributions to Austin council candidates).[12] As to potential future contributions that she seeks to "be free" to make before a fundraising window opens, she does not yet have in mind who they might be and she is not aware of anyone "of that sort." MSJ Exh. 3 at 66-67. Any such candidates would have to "fit the bill" for her to support them with a contribution. *Id.* at 67.

### 2. Clark

The other plaintiff, Clark, joined the lawsuit belatedly, but was aware of the lawsuit from its inception and was ready to join it then. MSJ Exh. 5 at 26-29. But he waited and is unaware of any explanation for why he did so. *Id.* He now resides in Montgomery County, a two-and-a-half hour drive from Austin. Clark Resp. to First Interrogs. (MSJ Exh. 12) (Resp. No. 2); MSJ Exh. 5 at 7. After living in the Houston area in the 1997 period, Clark had moved to Austin in 2014, where he resided until January 2021. MSJ Exh. 12 (Resp. No. 2); MSJ Exh. 5 at 8. He has been registered to vote in Montgomery County since 2021 and did not vote in the 2022 Austin Mayoral election. *Id.* at 19-20.

---

[12] Contributions to Troxclair and Berry were not for city council races. *See* https://www.aus-tintexas.gov/cityclerk/elections/2022_campaign_finance_reporting.htm *and* https://services.aus-tintexas.gov/election/search.cfm.

Clark has not been a council candidate, and his only contributions to council candidates have been to Virden.[13] *See* MSJ Exh. 12 (Resp. No. 5). When he lived in Austin, he was in District 10, MSJ Exh. 6 at 9, and contributed $200 to her general election race and $400 to her run-off race in that district. Later, he contributed $400 to her 2022 Mayoral race, his last contribution to any Austin council candidate.

As to future contributions, Clark is decidedly equivocal. He foresees a possibility that circumstances might arise in which, though he no longer resides and votes in Austin, he might contribute to future city council candidates. Observing that "there's no candidates . . . right now," *id.* at 58, he says he will give to future Austin candidates "if there's a candidate that I agree with and that . . . you know, just depends," *id.* at 63-64. It is "conceivable" to him that he could donate to such future candidates "if I believe in what they believe in, and I believe we'll see." *Id.* at 67.[14]

## ARGUMENT

### III. SUMMARY JUDGMENT STANDARDS

The standards for summary judgment are well-established and thus only briefly summarized. A grant of summary judgment is proper when there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter

---

[13] Clark also *received* Virden campaign money. She paid him $2,000 in mid-December 2020 for his work as volunteer coordinator in the District 10 race. MSJ Exh. 5 at 57; MSJ Exh. 3 at 60-61, 79.

[14] The document Clark attached with his Resp. No. 5 is obviously in error, showing contributions that would have been illegal if accepted. The contribution numbers in the text are from Virden's official CFRs: Virden II Depo. Exh. 24 at PDF 14; *id.* Exh. 27 at PDF 25; and *id.* Exh. 29 at PDF 12. They match his deposition testimony. *See* MSJ Exh. 5 at 55-56.

of law. Fed.R.Civ.P. 56(a); *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).

The bar of limitations may be raised on summary judgment. *C&C Inv. Prop., L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655, 660 (5th Cir. 2016). If a defendant moves for summary judgment on an affirmative defense—and running of the limitations period is an affirmative defense, Fed. R. Civ. Proc. 8(c)(1)—and establishes the elements of the defense, the plaintiff then has to create an issue of fact to defeat the defense. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 420 n.4 (5th Cir. 2016).

Although Article III justiciability is jurisdictional. *see, e.g., McCardell v. U.S. Dep't of Housing and Urban Dev.*, 794 F.3d 510, 516 (5th Cir. 2015), summary judgment is an appropriate vehicle for questioning a plaintiff's standing and whether a claim is moot. *Bischoff v. Osceola County*, 222 F.3d 874, 878 (11th Cir. 2000) (standing); *Reid v. Hurwitz*, 920 F.3d 828, 835 (D.C. Cir. 2019) (mootness). When the standing issue is thus raised, the plaintiff must go beyond mere allegations and, instead, provide specific summary judgment facts supporting standing. *Clapper v. Amnesty Internat'l USA*, 568 U.S. 398, 412-13 (2013). For mootness in this context, it is the movant's burden to establish facts showing it, *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979), but if that happens, the burden shifts to the plaintiff to adduce facts showing a live controversy remains, *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 254 (3d Cir. 2017).

#### IV. SUMMARY JUDGMENT AGAINST VIRDEN AND CLARK IS PROPER ON ALL CLAIMS FOR RELIEF

Virden and Clark seek judicial relief looking in two directions: the past, in the form of nominal damages; and the future, in the form of declaratory and injunctive relief. As a matter of law, based on facts not subject to genuine dispute, they are not entitled to either form of relief. The analytical framework for the requested past relief differs from the framework for the requested future relief. Both are addressed below, in turn.

##### A. VIRDEN AND CLARK ARE NOT ENTITLED TO NOMINAL DAMAGES

###### 1.  The Limitations Period Had Run Before Virden And Clark Claimed Nominal Damages

This case is brought under 42 U.S.C. § 1983, and, as a general proposition, a plaintiff in a § 1983 action who establishes a violation of personal constitutional rights may obtain an award of nominal damages "without proof of actual injury." *See Carey v. Piphus*, 435 U.S. 247, 266 (1978). Still speaking broadly, a request for such nominal damages for past injury may even rescue a case that has otherwise become non-justiciable during the course of the litigation—as this one has, *see infra* at 17-23—from dismissal for lack of jurisdiction. *Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021). The underlying rationale is that, while a plaintiff has to maintain a "personal interest" in the dispute through all stages of a case, and demonstrate entitlement to a remedy likely to "redress" the complained-of constitutional injury, a request for nominal damages for past injury satisfies standing's redressability requirement if the claim is based on "a completed violation of a legal right." *Id*. at

796-97, 802.[15] Virden and Clark claim nominal damages in an effort to dodge the jurisdictional sinkhole they otherwise have fallen into. But the effort is unavailing because nominal damages are off-limits to them.

No federal statute specifically establishes a statute of limitations for § 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 266 (1985). Taking instruction from 42 U.S.C.§ 1988, the Supreme Court has determined that the limitations period for such actions must be borrowed from the most analogous forum-state law. *Id*. at 67. And the analogue is the limitations rule for personal injury torts. *Id*. at 276-79. A state's catchall limitations period controls. *Owens v. Okure*, 488 U.S. 234 (1989). In Texas, Tex. Civ. Prac. & Rem. Code § 16.003(a) determines the limitations period for this § 1983 claim for nominal damages, which is two years. *See, e.g.*, *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018).

The accrual date for a § 1983 action is a matter of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). A cause of action presumptively accrues when the plaintiff has a "complete and present cause of action." *McDonough v. Smith*, 139 S.Ct. 2149, 2155 (2019).

When, as here, the § 1983 challenge is to an enacted municipal ordinance, the Fifth Circuit has determined that the accrual date is when the city council adopts the ordinance. *Peter Henderson Oil Co. v. City of Port Arthur*, 806 F.2d 1273, 1275 (5th Cir. 1987) (holding § 1983 challenge to city ordinance time-barred). The injury "dates from that time." *Id*. When a governmental body takes formal public action,

---

[15] Requesting attorney fees and costs does not serve a similar rescue function because it is not a form of redressability. *Uzuegbunam*, 141 S.Ct. at 801.

the injury allegedly inflicted by that action is "discovered" as a matter of law when the action is publicly and formally taken. *Cathedral of Joy Baptist Church v. Village of Hazel Crest*, 22 F.3d 713, 719 n.1 (7th Cir.), *cert. denied*, 513 U.S. 872 (1994).

Virden and Clark's challenge to Austin's temporal restriction on campaign fund-raising is time-barred and must be dismissed. The ordinance adopted by the council, establishing the restriction at issue in this case, took effect on October 16, 2017. MSJ Exh. 4 ¶ 14. This is the accrual date for Plaintiffs' cause of action. Virden did not challenge the ordinance for another three and a half years, when she filed this lawsuit on March 25, 2021. Doc. 1. Clark waited still another year, not seeking joinder as a party to the suit until April 6, 2022. Doc. 47.[16]

Virden waited well over a year too long to challenge Austin Ord. No. 20171005-029. So did Clark, even assuming *arguendo* that his challenge relates back under Fed. R. Civ. Proc. 15(c) to the time of Virden's challenge. Their § 1983 claim for nominal damages stemming from the ordinance's alleged unconstitutionality are time-barred and must be dismissed.

### 2.   Virden Does Not Have Standing To Seek Nominal Damages

The interaction of *Uzuegbunam*'s requirement in the nominal damages context that there be a "completed violation of a legal right" with *Carey*'s rule that nominal damages may be awarded without showing "actual injury" is thus far judicially undeveloped. So, to preserve the issue for future review and because the Court must

---

[16] *U.S. for Use and Benefit of Canion v. Randall & Blake*, 817 F.2d 1188 (5th Cir. 1987), held that limitations is tolled by someone joining a lawsuit when they first file the request, not when it is granted. *Id*. at 1192.

assure itself of its own jurisdiction, the City propounds an additional reason, beyond the limitations grounds addressed in Part IV.A.1, for dismissal of Virden's claim for nominal damages: the Court lacks jurisdiction over it because she has failed to meet the elements of the standing test that require showing an injury in fact fairly traceable to the challenged restriction.

Nominal damages are unavailable to a plaintiff who fails to establish "a past, completed injury." *Uzuegbunam*, 141 S.Ct. at 802 n.*. Early in this case, the Court made a determination about Virden's standing based on what was then reasonably foreseen to be the impact of the challenged restriction on Virden's mayoral campaign. From that vantage point, the Court found that Virden had standing because she intended to seek campaign money to "use those funds to convey her message to voters." Order of May 21, 2021 (Doc. 21) at 8.[17] But as it turned out, even when she had funds available for campaign use, she deliberately refrained from deploying them until after the fundraising window opened. She had the financial wherewithal to loan her campaign substantial funds—significantly more in fact than she raised from others during the entire campaign—for use during what she has insisted was the critical period before fundraising opened, but opted not to do so. Instead, she chose to wait until forty-two days *after* the window opened to make her $300,000 personal loan to the campaign.[18] There is no indication in retrospect that the injury

---

[17] The initial, since-vacated Fifth Circuit Order of October 26, 2021—at page 3—saw her standing at the time as resting on a "loss of funding." The funds were there, just not used.

[18] Virden's loan was not subject to the temporal restriction on campaign *contributions*. Personal loans to campaigns are not contributions, but rather, campaign expenditures "unless and until they are repaid." *Anderson v. Spear*, 356 F.3d 651, 672 (6th Cir.), *cert. denied*, 543 U.S. 956 (2004). Self-funding of campaigns is excepted from the Charter's contribution cap. Charter Art. III, § 8(A)(1) (1st sent.)

she alleged at the beginning of this case actually occurred or that it would be "fairly traceable" to the challenged restriction. Consequently, Virden lacks standing to seek nominal damages.

**B.  Mootness And Lack Of Standing Preclude Virden And Clark's Request For Declaratory And Injunctive Relief, Which In Any Event The Concurrent Remedy Doctrine Bars**

**1.  Virden's Candidacy-Based Claim Is Moot Because Virden No Longer Has Standing**

A case must be justiciable through all its stages, not merely when it is filed. *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 609 (1997); *see also Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (Article III "case or controversy" requirement applies through all steps of judicial process).

A case that was justiciable at its outset, and whose plaintiff originally had the requisite standing, can become moot as the case and events progress. And this mootness may derive from the fact that the plaintiff who had standing to begin with has lost it during the course of the case. Such is the situation here.

The test for standing is familiar:

> The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. . . . The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.

*Spokeo, Inc. v. Robins* 578 U.S. 330, 338 (2016) (citations omitted).

The "injury in fact" component includes requirements that the injury be "concrete and particularized" and "actual or imminent." *Carney v. Adams*, 141 S.Ct. 493, 498 (2020). Abstract and generalized harms to a person's generalized interest in legal rules do not meet the "injury in fact" test. *Id*. Past wrongs don't count as real

and immediate threats of injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). The threatened injury must be "certainly impending." *Clapper*, *supra*, 568 U.S. at 409. Contingent future events that may not occur as anticipated do not do the trick for standing. *Texas v. United States*, 523 U.S. 296, 300 (1998). There must be a "substantial risk" that the alleged injury will be faced again. *Clapper*, 568 U.S. at 414 n.5.

That Virden met this part of the standing test in May 2021, before the mayoral race was seriously underway and a year and a half before it concluded does not mean that she meets it now. She has to maintain the requisite personal interest imparting standing throughout the litigation. *Carney*, 141 S.Ct. at 499; *Uzueg-bunam*, 141 S.Ct. at 796. She has not done so. Her current posture as a future can-didate—or not—for Austin elective office differs dramatically from her posture as an active candidate earlier in the case.

She lost badly in her recent campaign. She raised less money in it than she did in her council district race, even though the more recent race was city-wide and she was a candidate for well over a year instead of only few months as she had been in the previous race. Her vague, open-ended averment before her recent campaign de-feat that she "intends" to be a candidate at some unspecified point in the future for some unidentified position becomes even vaguer—indeed, is at best now gossamer-thin—in light of what befell her in her race for Mayor. The poor results can only serve to dampen her propects as a future city candidate. She is not presently a

candidate for Austin elective office, she has not taken concrete steps to become one, and recent events provide her no incentive for doing so.

Virden's future plans for an Austin candidacy are inadequate to establish standing to continue pursuing her case. Case law reinforces this conclusion. A Senator whose current term would not expire for a few more years, and who consequently would be confronted by the campaign finance restriction he was challenging did not have standing to continue the challenge because the threatened injury to him was "too remote temporally." *McConnell v. FEC*, 540 U.S. 93, 226 (2003). Another former candidate for elective office, and potential would-be candidate for some unidentified future office, lacked standing to make a First Amendment challenge to a campaign finance rule because predictions about another "foray" into electoral politics down the road were too speculative. *Nader v. FEC*, 725 F.3d 226, 229 (D.C. Cir.), *cert. denied*, 571 U.S. 1073 (2013). More recently, a First Amendment challenger to a state system for selecting judges was denied standing because he could not show that he was "able and ready" to apply for one of the judgeships. *Carney*, 141 S.Ct. at 500. Discovery in his case reflected that he could muster nothing more than a vague hope or yearning for the opportunity to seek a judgeship, prompting the Court to recall the words of an earlier opinion on standing: "'[S]ome day intentions'" do not support a finding of actual or imminent injury. *Id*. at 502, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

The conclusion is unavoidable that on the undisputed facts, Virden no longer has standing as a potential candidate to challenge the City's temporal restriction

on campaign fundraising. For a case this far along, though, this loss of standing translates into the case having become moot. This is because of the concept that mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (internal quotes omitted). Because Virden no longer has standing, her candidacy-based constitutional challenge is now moot.

### 2. Virden and Clark's Contributor-Based Claims About Future City Campaigns Are Not Ripe And They Lack Standing To Press Them

Virden and Clark have undertaken a late effort to breathe life into their case by claiming standing-imparting injury with averments that they want to make campaign contributions to future candidates for Austin elective office and to make them in the off-year of any such candidacies, outside the period when the fundraising window is open. This resuscitation effort won't work.

The first problem is that contributors *qua* contributors cannot really run afoul of Austin's temporal fundraising rule in a manner that subjects them to adverse action from the City. The enforceable legal onus for violations of the rule falls on candidates, not contributors. The challenged restriction prohibits "a *candidate*" from "rais[ing] funds"—that is, soliciting and accepting a contribution, *see infra* at 6 n.9—outside the one-year fundraising period. Code § 2-2-7(G) (emphasis added). The council has established a "knowing violation" of Chapter 2-2 as a Class C misdemeanor. Setting aside the matter of "knowing," a violation of the chapter's prohibition only occurs if the *candidate* solicits or accepts an outside-the-window

contribution proffered by a supporter. The proffer is not the violation; the solicitation or acceptance of it is. The same legal dynamic is at work on the civil side, where the council has given the City's Ethics Review Commission limited jurisdiction to hear sworn complaints of violations of, among other things, the provisions of Chapter 2-2 of the Code, which includes § 2-2-7(G). *See* Code § 2-7-26. To repeat, the enforceable legal onus falls on the candidate, not a would-be contributor.

The upshot of this enforcement framework is that Virden and Clark, as possible off-year contributors to council candidates in the future, do not themselves face adverse legal consequences if they try to make such contributions. This lightens, if it does not eliminate entirely, any injury that might be inflicted on them as contributors unable to move campaign money to a candidate more than a year before a general election.

More damning, however, to Plaintiffs' standing and the ripeness of their contributor-based claims for the future is that there is no discernable concrete injury at this point. There are no candidates for the City's next general election to which contributions might be proffered outside the fundraising period. MSJ Exh. 4 ¶ 20. Neither Virden nor Clark were able to identify anyone on the near-horizon who might be a candidate for Austin office to whom they would want to make an off-year contribution. Virden has never made contributions to council candidates in the past and admits that, as to the future, she has no would-be candidate in mind, and any such person would have to "fit the bill" for her to be willing to make her first-ever contribution to a council candidate. Clark's future plans are even more inchoate.

He's contributed to only one council candidate in the past, and that was Virden, who presently isn't running for Austin office. He doesn't live in Austin anymore either, further weakening his link to Austin council races. He has testified that there are no Austin candidates to contribute to right now and that, when there are, whether he would contribute at all "depends" on the situation and the candidate and that he would have to find someone he agrees with. Ending his musings the potential for future contributions, he could summon nothing more specific than "we'll see."

None of this is remotely sufficient to impart the requisite concreteness to make this a "case or controversy" on the issue of future campaign contributions to Austin council candidates outside the authorized fundraising window. An attenuated "chain of contingencies" is insufficient to impart ripeness or preserve standing in a case. *Clapper*, 568 U.S. at 410; *see also Glass v. Paxton*, 900 F.3d 233, 240-41 (5th Cir. 2018) (finding that the necessary "certainty" of harm was absent, and thus standing unavailable, due to chain of contingencies before the complained-of harm would befall the plaintiff). In a recent, high-profile public policy dispute that reached the Supreme Court, the Court determine that the case was not ripe because the complained-of harm was "riddled with contingencies and speculation that impede judicial review." *Trump v. New York*, 141 S.Ct. 530, 535 (2020).

There must be a "substantial risk" of suffering a "threatened future injury," *Stringer v. Whitley*, 942 F.3d 715, 724 (5th Cir. 2019, and relief such a Virden and Clark request "cannot be based on *a possible future factual situation that may never happen.*" *Dahl v. Village of Surfside Beach*, 2022 WL 17729411 (5th Cir. Dec. 16,

2022) at *2, citing *NOPSI v. Council of New Orleans*, 833 F.2d 583, 587-88 (5th Cir. 1987) (emphasis added). A possible future factual situation that may never happen is all that Virden and Clark have.

Virden and Clark's challenge as contributors to future application of Austin's campaign finance temporal restriction depends on there being actual candidates, that they become candidates in time for Plaintiffs to try contributing to them outside the authorized time period, and that they be the kind of candidates that Virden and Clark want to support with contributions. Even then, a firmer commitment to actually make the out-of-time contribution has not actually been made—and the fact that eight of the ten declarants who had actually made a written, court-filed avowal never even made a timely contribution when the time came spotlights the thinness of Virden and Clark's commitments. This is not the stuff of a ripe claim, nor is it sufficient to establish Plaintiffs' standing to pursue it. This part of the case should be dismissed.

### 3. Declaratory And Injunctive Relief Are Unavailable Under The Concurrent Remedy Doctrine

Virden and Clark's failure to file suit for nominal damages within the two-year limitations period for challenging Austin Ord. No. 20171005-029 also dooms their request for declaratory and injunctive relief directed against the ordinance going forward. Their damages claim and their equitable claims spring from the same facts. In such a circumstance, "equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy." *Gilbert v. City of Cambridge*, 932 F.2d 51, 57 (1st Cir.), *cert. denied*, 502 U.S. 866 (1991) (citing *Cope v.*

*Anderson*, 331 U.S. 461, 464 (1947), and *Russell v. Todd*, 309 U.S. 280, 289 (1940)). As stated in *Cope*, "equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy." 331 U.S. at 464; *see also Russell*, *supra*, 309 U.S. at 289 ("equity will withhold its remedy if the legal right is barred by the local statute of limitations").

The Fifth Circuit has followed this rule. *United Transport. Union v. Florida East Coast Ry.*, 586 F.2d 520, 523 (5th Cir. 1978) (adopting district court opinion stating that "equitable relief is barred when legal relief is barred"). This legal principle is known as the concurrent remedy doctrine. *See, e.g.*, *Nat'l Parks and Conserv. Ass'n v. TVA*, 502 F.3d 1316, 1326-27 (11th Cir. 2007), *cert. denied*, 554 U.S. 917 (2008) (citing *Florid East Coast Ry.*).

Under this doctrine, not only must Virden and Clark's request for nominal damages be denied on summary judgment, but their only remaining requested remedies—declaratory and injunctive relief—likewise should be denied. Thus, independently of the issues of standing and mootness addressed in Part IV.B *supra* at 17-23, Plaintiffs are left with no remaining viable claims, and their action should be dismissed with prejudice.

## CONCLUSION

The City urges the Court to grant this motion, deny Plaintiffs all relief, and enter final judgment dismissing their claims with prejudice. In the alternative only, their request for nominal damages should be dismissed with prejudice, and their requests for declaratory and injunctive relief denied without prejudice.

Respectfully submitted,

Anne L. Morgan, CITY ATTORNEY
Meghan L. Riley, CHIEF, LITIGATION
State Bar No. 24049373
meghan.riley@austintexas.gov

CITY OF AUSTIN LAW DEPARTMENT
Post Office Box 1088
Austin, Texas 78745
(512) 974-2458
(512) 974-1311 fax


___/s/ Renea Hicks_____
Renea Hicks
Attorney at Law
Texas Bar No. 09580400

LAW OFFICE OF MAX RENEA HICKS
P.O. Box 303187
Austin, Texas 78703-0504
(512) 480-8231
rhicks@renea-hicks.com

ATTORNEYS FOR DEFENDANT
CITY OF AUSTIN

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of February, 2023, I served a true and correct copy of the foregoing pleading on all counsel of record through the Court's ECF system.

__/s/ Renea Hicks_____
Max Renea Hicks

APPENDIX

## CITY OF AUSTIN SUMMARY JUDGMENT MOTION EXHIBIT LIST

**MSJ Exhibit 1**
City of Austin Ordinance No. 20171005-029 (Oct. 5, 2017)–"Ord. No. 20171005-029"

**MSJ Exhibit 2**
Plaintiffs' First Amended Initial Disclosures (Oct. 3, 2022)–"Ps' First Am. Discl.")

**MSJ Exhibit 3**
Oral Deposition of Jennifer Virden (Sept. 21, 2022)–"Virden II Depo."

**MSJ Exhibit 4**
Declaration of Myrna Rios (Jan. 31, 2023)–"Rios Decl."

**MSJ Exhibit 5**
Oral Deposition of William H. Clark (Nov. 28, 2022)–"Clark Depo."

**MSJ Exhibit 6**
Oral Deposition of Jennifer Virden (June 17, 2021)–"Virden I Depo."

**MSJ Exhibit 7**
Declaration of Jannette Goodall (April 14, 2012)–"Goodall Decl."

**MSJ Exhibit 8**
Campaign Finance Report of Jennifer Virden (Jan. 4, 2022)–"Virden CFR, 1/4/22"

**MSJ Exhibit 9**
Campaign Finance Report of Jennifer Virden (July 13, 2022)–"Virden CFR, 7/13/22"

**MSJ Exhibit 10**
Campaign Finance Report of Jennifer Virden (July 15, 2021)–"Virden CFR, 7/15/21"

**MSJ Exhibit 11**
Virden's First Supplemental Responses to Defendant's First Set of Interrogatories (June 2, 2022)–"Virden Supp. Resp. to First Interrogs."

**MSJ Exhibit 12**
William Clark's Responses to Defendant's First Set of Interrogatories (Nov. 22, 2022)–"Clark Resp. to First Interrogs."