IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JENNIFER VIRDEN and WILLIAM CLARK, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:21-CV-271-RP |
| | § | |
| CITY OF AUSTIN, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court are the parties' cross motions for summary judgment. Plaintiffs Jennifer Virden's ("Virden") and William Clark ("Clark") (together, "Plaintiffs") filed a motion for summary judgment, (Dkt. 67), and Defendant City of Austin, Texas's ("City" or "Austin") filed a motion for summary judgment, (Dkt. 66). The parties filed responses and replies. (Dkts. 69, 70, 71, 72). Three months later, Plaintiffs filed a motion for leave to supplement the summary judgment record, (Dkt. 74), and a motion to expedite, (Dkt. 76).[1] The City filed a consolidated response, (Dkt. 77), and

---

[1] Plaintiffs asked for leave to supplement the summary judgment record on May 17, 2023, months after the February dispositive motions deadline. (Mot. Suppl., Dkt. 74). Plaintiffs seek to add three documents: (1) "verification" by Jade Lovera, (2) "supplemental verification" by Jennifer Virden, and (3) Lovera's filed amendment form indicating she appointed a campaign treasurer. (Exhibits, Dkts. 74-1, 74-2, 74-3). Plaintiffs assert the new documents help counter the City's mootness argument, discussed *infra* Section III.B, and should be considered by the Court. Plaintiffs submit them late because "Virden became aware [in May] that Jade Lovera wishes to begin fundraising immediately to support a campaign for [city council] . . . [and] would contribute at least $200 to Lovera immediately." (Dkt. 74, at 1, 3). The City acknowledges that Lovera's campaign amendment is publicly available and does not oppose the Court considering it. The City does oppose either declaration from being considered as being untimely, inadmissible hearsay and asks that, if the evidence is to be considered, the City should have the opportunity to depose both declarants followed by supplemental simultaneous filings by the parties regarding those depositions. (Resp., Dkt. 77, at 3–4). At the same time that Plaintiffs seek to introduce new evidence into the record months past the deadline, Plaintiffs concede that if the Court allows the City to question the declarants, the Court should hold an evidentiary hearing or order "short depositions." (Reply City Mot. Summ. J., Dkt. 78, at 8). The Court will deny Plaintiffs' request for leave to supplement the summary judgment record as untimely. In addition, Plaintiffs' request to add new evidence at the very end of the case—trial is a few weeks away—would necessarily entail allowing the City to reopen discovery, slowing down the case and delaying resolution, which Plaintiffs claim they do not want in their motion to expedite. Plaintiffs want the case to move faster, now that their part of filing a motion for summary judgment is done, but at the same time they propose to slow the case down by

Plaintiffs filed a consolidated reply, (Dkt. 78). Having considered the parties' briefs, the record, and the relevant law, the Court will grant in part and deny in part the City's motion for summary judgment, grant in part and deny in part Plaintiffs' motion for summary judgment, deny Plaintiffs' motion for leave to supplement the record, and moot Plaintiffs' motion to expedite.

## I. BACKGROUND

Plaintiffs Virden and Clark challenge the City's ordinance that creates a campaign fundraising blackout period. Per city ordinance, a candidate for city office may only raise funds for an election during the authorized campaign period, and the campaign period for a general election "begins the 365th day before the date for the general election." (City Code § 2-2-7(B), (G), Dkt. 66-2). In other words, a candidate for city office may only collect campaign contributions in the one year before the election. Prior to that year, the blackout period is in effect. Previously, the campaign period for city office candidates was limited to the six months before a general election. The constitutionality of that blackout period was challenged by a different individual in *Zimmerman v. City of Austin*, 1:15-cv-628-LY (W.D. Tex. 2015). The Court held a bench trial and held, among other holdings, that the City's blackout period violated the First Amendment, (*Zimmerman*, 1:15-cv-628-LY, Findings of Fact and Conclusions of Law, Dkt. 67), and the Fifth Circuit affirmed on appeal, *Zimmerman v. City of Austin, Texas*, 881 F.3d 378, 389 (5th Cir. 2018). Following that ruling, the City changed the campaign period from six months to one year in 2017, (*see* David Butts Depo., Dkt. 69-4, at 7), creating the current blackout period that is now being challenged by Plaintiffs.

Virden is an Austinite who ran for city council in 2020, finished in the top two of seven candidates, and lost in the runoff. (Virden Depo. I, Dkt. 67-1, at 5, 10); (2d Am. Compl., Dkt. 57, at 3). After losing that race, Virden filed this lawsuit in March 2021, alleging that she planned to "run [again] for City office in the November 2022 elections." (Compl., Dkt. 1, at 4). She later settled on

---

introducing new evidence at the end of the case. Plaintiffs cannot have it both ways. The Court will deny Plaintiffs' motion to supplement and moot Plaintiffs' motion to expedite.

running for mayor. (Virden Depo. I, Dkt. 67-1, at 4). To support her mayoral candidacy in 2021, Virden wanted to start soliciting and accepting campaign contributions before the beginning of the campaign period, i.e., during the blackout period. (2d Am. Compl., Dkt. 57, at 4). She needed to fundraise during the blackout period "to produce and distribute public communications that would simultaneously inform voters on city issues and solicit support for Virden's campaign, and to build her campaign account for use in the November 2022 elections." (*Id.*).

After filing suit in March 2021, Virden filed a motion for preliminary injunction on April 1, 2021. (Mot. Prelim. Inj., Dkt. 5). On April 26, 2021, the City filed a motion to dismiss. (Mot. Dismiss, Dkt. 14). The Court denied the City's motion to dismiss on May 21, 2021. (Order, Dkt. 21). After additional filings and conferences, the Court was able to set the preliminary injunction hearing for June 25, 2021. (Minute Entry, Dkt. 33). Less than a week later, the Court issued its order denying Virden's motion for preliminary injunction on the grounds that Virden failed to show she would suffer irreparable harm without a preliminary injunction. (Order, Dkt. 34). Virden immediately filed a notice of interlocutory appeal. (Notice of Appeal, Dkt. 35). On October 25, 2021, the Fifth Circuit issued a per curiam opinion affirming this Court's order denying Virden's request for a preliminary injunction. *Virden v. City of Austin*, No. 21-50597, 2021 WL 4955613, at *2 (5th Cir. Oct. 25, 2021). Virden filed a motion for rehearing en banc and then an opposed motion to vacate the panel decision, arguing that her request for a preliminary injunction was moot since the blackout period had ended and she was allowed to raise funds. (*Virden v. City of Austin*, No. 21-50597, Dkt. 85.) The Fifth Circuit granted Virden's motion, dismissed her interlocutory appeal, and remanded the case for further proceedings. (Dkt. 42). Once back in this Court, Virden filed a motion for leave to file an amended complaint to amend her allegations and to add Clark to the lawsuit, (Dkt. 47). The Court allowed Virden to amend her allegations and denied without prejudice her request to add Clark as a plaintiff because the basis for that request was not properly raised. (Text Order, 4/19/2022). Virden

refiled her opposed motion for leave to amend her complaint to add Clark, (Dkt. 51), which the Court granted, (Dkt. 56; 2d Am. Compl., Dkt. 57).

Clark lives in Spring, Texas, which is north of Houston, (Clark Depo., Dkt. 67-2, at 4), and supported Virden's campaign in 2022, (Clark Decl., Dkt. 67-3, at 1). In March 2021, he wanted to donate $400 to Virden's campaign but could not do so because of the blackout period. (*Id.* at 2). He wanted Virden "to be able to raise funds for her campaign immediately . . . [so she could] disseminate her message when she believes it most necessary and advantageous." (*Id.* at 1). In 2022, after Virden lost her bid for mayor, Clark still had a general interest in Austin politics saying he might contribute to a candidate for city office "if I believe in what they believe in." (Clark Depo., Dkt. 67-2, at 19).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party does not bear the ultimate burden of proof, after it has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the

motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). When the movant bears the burden of proof, she must establish all the essential elements of her claim that warrant judgment in her favor. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). In such cases, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin All. v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). Cross motions for summary judgment "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

### III. DISCUSSION

The City of Austin moves for summary judgment as to Plaintiffs' claims for nominal damages and their claims for declaratory and injunctive relief. (City Mot. Summ. J., Dkt. 66). The City argues Virden's claim for nominal damages fails for two reasons: (1) Plaintiffs' claims for nominal damages are barred by the statute of limitations and (2) Virden lacks standing to bring her

claim for nominal damages. The City also argues that Plaintiffs' claims for declaratory and injunctive relief are moot and unavailable under the concurrent remedy doctrine. In their motion for summary judgment, Plaintiffs argue they have standing to bring their claims and that the blackout period is facially unconstitutional. (Pls. Mot. Summ. J., Dkt. 67). The Court begins its analysis with the City's motion for summary jurisdiction as it raises jurisdictional arguments.

### A.     Plaintiffs' Claims for Nominal Damages

#### 1.     Plaintiffs' Claims for Nominal Damages Are Not Barred by the Statute of Limitations

According to the City, Plaintiffs failed to seek nominal damages before the two-year limitations period ended, and their claims are therefore barred by the statute of limitations. The parties do not dispute that a two-year statute of limitations applies in this case. In a federal civil rights action, the most appropriate state statute of limitation applies. *Wilson v. Garcia*, 471 U.S. 261 (1985). In Texas, a claim for nominal damages under Section 1983 is subject to a two-year statute of limitations. Tex. Civ. & Rem. Code § 16.003; *Longoria v. City of Bay City*, Texas, 779 F.2d 1136 (5th Cir. 1986). The dispute instead centers on when Plaintiffs' causes of action accrued, which is a matter of federal law.

Section 1983 actions accrue when the injured party knows or has reason to know of the injury which forms the basis for the action. *Longoria*, 779 F.2d at 1138. The City analogizes Virden's notice of her injury to the plaintiffs *Peter Henderson Oil Co. v. City of Port Arthur, Tex.*, 806 F.2d 1273, 1275 (5th Cir. 1987). In that case, the plaintiff oil companies suffered injury because of an allegedly unconstitutional city ordinance requiring plaintiffs to obtain consent from nearby property owners before reworking an oil well. *Id.* The ordinance was passed on April 9, 1979, and plaintiffs "were given explicit, unambiguous notice that the property would be subject to the requirement of consent by nearby landowners." *Id.* Plaintiffs sought permission again to rework the well in 1983 but failed to include the requisite permission from nearby landowners leading the city to deny their request. *Id.*

Since Plaintiffs did not sue until 1984, which was five years after they had notice of the city ordinance, the Fifth Circuit held that their action was barred by the statute of limitations. *Id.*

Under the City's theory, Plaintiffs' accrual date is October 16, 2017—the day the City adopted the blackout period—and Plaintiffs waited too long to file their claims since Virden filed her lawsuit in 2021 and Clark joined later. (City Mot. Summ. J., Dkt. 66, at 15). From the time the blackout period was adopted, Virden waited 3.5 years and Clark 4.5 years to challenge the blackout period. (*Id.*). According to the City, since both Virden and Clark did not file their claims before October 16, 2019 when the limitations period ended, Virden and Clark's claims are time-barred. (*Id.*). Virden disagrees, arguing that she did not have "any inkling of becoming a candidate until the summer of 2020, *after* the fundraising window had opened for that cycle." (Resp. City Mot. Summ. J., Dkt. 70, at 10) (citing Virden Depo. I, Dkt. 67-1, at 8). Following that logic, Virden argues she was not restricted as a candidate by the blackout period until after that campaign ended and thus her suit was timely. (*Id.* at 10).

Setting aside the parties' arguments about when exactly Virden and Clark became aware of the blackout period, the City's reliance on *Peter Henderson Oil* is misplaced. The case does not necessarily stand for the general proposition that the passage of any city ordinance always provides adequate notice to would-be challengers as of the date the ordinance was passed. A key fact in *Peter Henderson Oil* was that the city had given "explicit, unambiguous notice" of the ordinance directly to the plaintiffs. 806 F.2d at 1275. In fact, the ordinance in dispute there granted the plaintiffs a specific permit to rework the oil well if certain conditions, like the consent requirement, were met. *Id.* at 1274. The ordinance was a decision on a permit requested by the plaintiff. It was not a city ordinance like the one here that was passed to regulate city elections; the blackout period was not a specific permitting (or campaign contribution) decision as to Virden and Clark. The City did not provide notice of the blackout period directly to Virden and Clark in 2017 when it was adopted.

7

Because the facts of *Peter Henderson Oil* are distinguishable in an essential way, the holding of *Peter Henderson Oil*—even if the Court's accepts the City's broad interpretation of the holding—is not binding in this case. Lacking any other support for its contention that the accrual date for Virden and Clark's claims was in 2017, the City's argument that Virden and Clark's claims for nominal damages are barred by the statute of limitations must fail.

### 2. Virden Has Standing to Seek Nominal Damages for Past Injury[2]

This Court previously found that Virden had established standing to bring her claims on May 21, 2021. (Order, Dkt. 21). At the time, the Court relied on Virden's announced intention to run for office, either for city council or mayor, publicly through a press release and in her complaint allegations. (*Id.* at 5). Two years later, the City argues that Virden has failed to establish a "past, completed injury" to obtain nominal damages. (City Mot. Summ. J., Dkt. 66, at 16) (quoting *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 n. * (2021) ("Nominal damages go only to redressability and are unavailable where a plaintiff has failed to establish a past, completed injury.")). Under *Uzuegbunam*, "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." 141 S. Ct. 792, at 802.

The City supports its argument that Virden has not shown a completed violation of her legal right with two assertions: (1) Virden did not deploy any campaign funds until after the fundraising window opened, and (2) she could have loaned her campaign personal funds before the blackout period and chose not to do so until forty-two days after the blackout period ended. (City Mot. Summ. J., Dkt. 66, at 16). The City concludes, "[t]here is no indication in retrospect that the injury she alleged at the beginning of this case actually occurred or that it would be 'fairly traceable' to the challenged restriction." (*Id.* at 16–17). As to the second assertion, the timing of Virden's personal loan to her campaign appears to be largely irrelevant to the question of whether the City's blackout

---

[2] The City does not argue that Clark lacks standing to bring his claim for nominal damages. In any event, the Court concludes that Clark has standing to seek nominal damages.

8

period on campaign contributions is unconstitutional given that Virden does not allege the blackout period affected her ability to loan her campaign funds. The City may be attempting to imply that Virden did not need funds during the blackout period, for if she had, she would have loaned herself money during the blackout period. That line of argument has been rejected by the Fifth Circuit. *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (rejecting Texas's argument that "other opportunities for speech" nullify the injury from the challenged restriction). In addition to a lack of relevance, the City's reasoning relies on unproven assumptions, and the Court will not consider it further. Likewise, the first assertion—that Virden did not spend campaign money until after the blackout period—does not show she did not suffer an injury during the blackout period when she was prohibited from collecting campaign contributions.

Virden asserts that she suffered three distinct injuries: (1) she was forced to withhold the "desired solicitations from her radio advertisements, changing the content of those communications," (2) she would have been soliciting and accepting contributions from supporters during the blackout period, and (3) because she could not fundraise during the blackout period, she could not communicate as a candidate "as robustly as she desired." (Resp. City Mot. Summ. J., Dkt. 70, at 1–3). Virden relies on her late-filed second supplemental declaration in support of her first injury, and the Court, as explained above, will not consider it here. As for Virden's second alleged injury, Virden argues that her "desired political speech and association" were foreclosed by the blackout period. (*Id.* at 2). Ten Virden supporters signed declarations in April 2021 saying they would have contributed to Virden, but for the blackout period, and several of the supporters did then contribute to Virden once the blackout period ended. (Virden Depo. II, Dkt. 66-4, at 29). Virden sufficiently demonstrates that she would have solicited and accepted contributions during the blackout period. The third injury identified by Virden—that she could not communicate as robustly as she desired—largely tracks the second injury as it relates to restrictions placed on her speech by

9

the blackout period. Despite the City's contention that Virden did not have a right as a candidate under the First Amendment to request and receive campaign funds, the Fifth Circuit has recognized that generally "both the contributing and contributed-to party have sufficient injuries-in-fact to challenge campaign finance restrictions." *Catholic Leadership Coalition of Texas v. Reisman* 764 F.3d 409, 423 (5th Cir. 2014). Based on her alleged injuries, Virden has standing to bring a claim for nominal damages for completed, past violations of the First Amendment.

### B.     Plaintiffs' Claims for Injunctive and Declaratory Relief Are Moot

Virden and Clark bring claims for injunctive and declaratory relief. Virden's claims are based on her alleged injuries as both a candidate and a would-be donor. Clark's claims are based on his alleged injuries as a would-be donor. The City argues their claims are moot. The Court agrees.

#### 1.     With No Concrete Plan To Run for Office, Virden's Claims as a Candidate Are Moot

The City argues Virden's candidacy-based claims for injunctive and declaratory relief are moot because Virden "is not presently a candidate for Austin elective office, she has not taken concrete steps to become one, and recent events provide her no incentive for doing so." (City Mot. Summ. J., Dkt. 66, at 19). In their response, Plaintiffs dispute whether the City makes a mootness or standing argument, saying "[t]he City discloses its doctrinal confusion by arguing that Plaintiffs' case is moot because . . . they cannot demonstrate *standing at this juncture*, due to alleged uncertainty as to whether Virden will again be a candidate for Austin office or whether Clark will identify another Austin candidate to whom he wishes to contribute," (Resp. City Mot. Summ. J., Dkt. 70, at 6). The City fires back that "the confusion is Plaintiffs', not Austin's." (Reply City Mot. Summ. J., Dkt. 71, at 12).

Article III's case or controversy language underpins both standing and mootness. The mootness doctrine ensures federal courts adjudicate only actual and concrete disputes. "Mootness has been described as the doctrine of standing set in a time frame." *Arizonans For Official English v.*

*Arizona*, 520 U.S. 43, 68 n.22 (1997) (cleaned up). A plaintiff must have the requisite personal interest at the beginning of the case (standing) and during the case (mootness). *Id.* While the City acknowledges Virden may have had standing when the case began and her mayoral race was underway, the City contends Virden no longer has a personal interest in the outcome given that she is no longer a candidate and has no firm plans to run again. Virden provides little evidence of her intent to run for election in Austin beyond saying she may run for office in the future. (*See, e.g.*, Am. Compl., Dkt. 57, at 6) ("[S]he intends to be a candidate for City office again in future elections."). Virden's vague intentions to run for office in the future are insufficient, especially in comparison to her firm intentions at the beginning of the case when she said she would run for city office in the November 2022 election either as mayor or city council member and had launched a campaign and selected a campaign treasurer. *See Mississippi State Democratic Party v. Barbour*, 529 F.3d 538 (5th Cir. 2008) (holding that the Mississippi State Democratic Party suffered no threat of imminent injury "[w]ithout concrete plans or any objective evidence to demonstrate a 'serious interest in a closed primary'"). As a candidate, Virden's claims for declaratory and injunctive relief are moot.

**2. With No Plans To Donate, Plaintiffs' Claims Are Moot**

Plaintiffs also attempt to demonstrate a threatened injury through Virden and Clark's potential interest in contributing to a campaign as a donor during the blackout period. Virden "desires to be free to make campaign contributions to other candidates for Austin office that those candidates can accept and use more than a year in advance of the relevant election date." (Am. Compl., Dkt. 57, at 6). Although Clark has an interest in Austin politics and city elections, he lives in Spring, Texas and cannot vote in Austin. (Clark Depo., Dkt. 67-2, at 17). Similar to Virden's indefinite plans to run as a candidate, neither Virden nor Clark presently seeks to donate money to a campaign that is subject to the City's blackout period or has a concrete plan to donate money to a campaign that may be subject to the City's blackout period in the future. (*Id.*) (Clark testifying that

11

he is not currently involved in Austin politics); (*id.* at 19) (Clark testifying it was "conceivable" that he could donate to another Austin candidate); (Virden Depo. II, Dkt. 66-4, at 20) (Virden testifying that she would only donate if someone "fit the bill," is not aware of anyone who does, and has no one in mind). Their current intentions differ from Clark's previous testimony that he would have donated to Virden in 2021. (*Id.* at 16). Without a plan to donate, Virden and Clark have failed to show they would suffer injury.

Plaintiffs cite *Justice v. Hosemann*, 771 F.3d 285, 291 (5th Cir. 2014), and *Pool v. City of Houston*, 978 F.3d 307, 312 (5th Cir. 2020), for the proposition that their "enthusiastic participation in the political process" in the past indicates they will be motivated to donate in the future. (Resp. City Mot. Summ. J., Dkt. 70, at 7). The evidence does not support this line of argument. It is unrefuted that Virden has never donated to a candidate running for city office, (City Mot. Summ. J., Dkt. 66, at 21), and Clark only donated to one candidate—Virden, who has no plans to run for office again, (Clark Depo., Dkt. 67-2, at 16) (listing Clark's donations to Virden). Because Plaintiffs have no definite plans to donate to a city candidate's campaign, Plaintiffs have failed to show a "serious intention to engage in conduct proscribed by law." *Zimmerman v. City of Austin, Texas*, 881 F.3d 378, 389 (5th Cir. 2018).

Plaintiffs finally argue their claims are subject to the "capable of repetition, yet evading review" exception to the mootness doctrine. The exception applies when (1) "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration" and (2) "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016). "If a court finds that plaintiff failed to meet their burden under either prong, it need not address the other." *Shemwell v. City of McKinney, Texas*, 63 F.4th 480, 484–85 (5th Cir. 2023). Plaintiffs cannot establish the first prong. Plaintiffs have been litigating this case for 2.5 years in the Western District of Texas and at the Fifth Circuit. Unlike

a paradigmatic election case with an election looming in days or months, Plaintiffs have spent the last several years fully litigating their claims. This case is in its final stage—the Court is presently deciding the parties' cross motions for summary judgment and will enter judgment in the case. Plaintiffs' claims have not evaded review.[3]

### C.   Plaintiffs Have Established Their Claims for Nominal Damages

#### 1.   Findings Regarding Plaintiffs' Past Injuries

Plaintiffs seek nominal damages for the past violations for their First Amendment rights when they were subjected to the City's blackout period. In its response to Plaintiffs' motion for summary judgment, the City focuses almost entirely on Virden and largely ignores Clark and any evidence specific to his allegations of past violations of his First Amendment rights. His name comes up only five times in the City's opposition brief: twice in footnotes and three other times (first to say he seeks summary judgment, second to say he "grounds his standing in being a contributor," and third to say he contributed to Virden during her mayoral race and he may, or may not, contribute to her again depending on her campaign platform). (Resp. Pls. Mot. Summ. J., Dkt. 69, at 1, 3, 4, 8, 14). Given that Clark's allegations of past injury are essentially unopposed, the Court will begin its factual findings with the evidence presented by Clark.

Clark's testimony supports his allegations that he wanted to donate to Virden's campaign in 2021 during a blackout period. In his deposition, Clark testified about why he supported Virden's candidacy and how the disputed ordinance stopped him from contributing money to her campaign during the blackout period. He explained that he had supported her lawsuit and was "against the fact that [Virden] couldn't raise funds during the . . . blackout period. . . . [S]he has an agenda which matches my agenda." (Clark Depo., Dkt. 67-2, at 9). Because he supported her vision, he thought it was "imperative" that she get her message out at the same time incumbents "has their message out."

---

[3] The Court will not address the City's concurrent remedy doctrine argument as it is premised on the Court finding that Plaintiffs' claims are barred by the statute of limitations, which this Court does not find.

(*Id.* at 11). He wanted Virden "to be able to raise funds for her campaign immediately, without waiting for an arbitrary date set by the City, and I want her to be able to use her campaign funds to disseminate her message when she believes it most necessary or advantageous." (Clark Decl., Dkt. 67-3, at 1). Clark testified that if there had been no blackout period, he would have donated $400 to Virden in March 2021. (Clark Depo., Dkt. 67-2, at 16). He was "ready, willing, and able." (*Id.*). He chose $400 because he understood that to be the maximum amount he could donate to a candidate. (*Id.*). Clark has shown he would have donated to Virden in 2021 but for the blackout period.

Virden's evidence establishes that she wanted to solicit and accept donations during the blackout period in 2021. After losing her city council race in December 2020 in a close runoff, Virden testified that she immediately decided to run for city office again. (Virden Depo. I, Dkt. 67-1, at 5). With her momentum coming off the close runoff election, she knew she wanted to run and continue the momentum. (*Id.* at 8–9). A few months later, in February 2021, she started "getting really serious" about running for mayor, (*id.* at 5). She then launched her campaign for mayor in late spring, (*id.* at 5-6). However, she could not accept donations because of the blackout period.[4] Virden wanted to accept contributions during the blackout period to prove her viability as a candidate and develop enthusiasm for her campaign. (*Id.* at 10). The City does not dispute Virden's evidence about her desire to donate and collect campaign contributions during the blackout period, and the Court finds Virden sought to accept campaign contributions during the blackout period in 2021.

Virden described the impact of the blackout period on her campaign in 2021. She was "not able to parlay the momentum that I had coming out of that District 10 runoff in which I had nearly defeated a very well-funded incumbent as a first-time candidate. . . . When you're not able to continue to receive contributions when everybody's fired up about your platform . . . it sucks the

---

[4] In addition to Clark, Virden establishes that other supporters had desired to donate money to her campaign during the blackout period in 2021. Gean Oliphint would have contributed $400 on April 9, 2021; Kevin Dunlevy would have contributed $400 on April 9, 2021; and Robert David would have contributed $100 on April 1, 2021. (Oliphint Decl., Dkt. 67-5, at 2; Dunlevy Decl., Dkt. 67-7, at 2; Davis Decl., Dkt. 67-9, at 2).

14

oxygen right out of the campaign. It just kills it." (Virden Depo. II, Dkt. 66-4, at 15). Virden explains, "[T]hen you've got to wait. . . . [M]eanwhile all your supporters have . . . completely disengaged." (*Id.*). Lacking that continual support, Virden cannot build up her "campaign war chest to compete against incumbents." (*Id.*). With campaign contributions during what is now a blackout period, Virden would have used the money to "disseminate my message on radio ads, mailers[,] . . . hire a political strategist, . . . hire a campaign consultant, . . . [and] hire a social media consultant." (Virden Depo. I, Dkt. 67-1, at 9).

### 2. The City's Blackout Period Violated Plaintiffs' First Amendment Rights

"Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution." *Buckley v. Valeo*, 424 U.S. 1, 14 (1976). To this end, the First Amendment protects political association as well as political expression. *Id.* at 15. *Buckley* and its progeny instruct that courts should give varying levels of constructional scrutiny to campaign-finance regulations depending on the type of regulation at issue to "draw the constitutional line between the permissible goal of avoiding corruption in the political process and the impermissible desire simply to limit political speech." *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1441 (2014).

Temporal limits on campaign contributions are subject to "closely-drawn" test set out in *Buckley*.[5] 424 U.S. at 25. Accordingly, the City must show (1) that the twelve-month limit serves the sufficiently important interest of preventing actual corruption or its appearance and (2) that it employs means that are closely drawn. *See id.* at 25; *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 432 (5th Cir. 2014) ("Even though the aggregate limit at issue here is only temporary, and, after the 60-day window passes, the general-purpose committee is largely free to spend as it pleases,

---

[5] Plaintiffs argue that the Court should apply strict scrutiny because temporal bans are a "severe restriction." (Pls. Mot. Summ. J., Dkt. 67, at 15–16). Because this Court holds that the blackout period fails under the closely drawn test, the Court need not decide whether strict scrutiny should be applied.

Texas must still show that the 60-day, 500-dollar limit employs means closely drawn."). While some courts have upheld temporal restrictions, this Court held that the City's previous temporal restriction of six months was "unconstitutional under the First Amendment." (*Zimmerman v. City of Austin*, 1:15-cv-628-LY, Findings of Fact and Conclusions of Law, Dkt. 67, at 18). For essentially the same reasons, this Court once again holds that the City's blackout period is unconstitutional.

Here, the City claims that the blackout period prevents the danger of quid pro quo corruption or the appearance of corruption because no bundling can occur outside the one-year fundraising window. Bundlers collect campaign contributions on behalf of a candidate from at least five people in amounts of at least $200 each. (City Code § 2-2-22(A)(2), Dkt. 69-3, at 2). The City presents the declaration of David Butts, a "long-time political consultant in Austin city council campaigns." (Resp. Pls.' Mot. Summ. J., Dkt. 69, at 18). Butts believes bundling creates a "realistic danger that the appearance of quid pro quo corruption will be presented in the context of bundling if the current temporal restriction on fundraising were lifted and bundled contributions could be made further out from the date of the general election than the year that is currently allowed." (Butts Decl., Dkt. 69-5, at 3). When bundling occurs, the public may perceive that "corporate and other kinds of business interests are giving large sums of campaign money to politicians for reasons having to do with support for, and adoption of, city policies and rules that favor the financial interests of those corporate and similar business interests." (*Id.* at 3–4). Butts explains that bundling would generate more publicity closer to an election whereas "off-year bundling" would be "stale news" even though the danger of quid pro quo corruption, or the public perception of quid pro quo corruption, would remain. (*Id.* at 4). The City argues that "[p]reventing a revival of this kind of public perception of corruption is an important governmental interest." (Resp. Pls.' Mot. Summ. J., Dkt. 69, at 22).

The City has failed to present sufficient evidence to show how a contribution made 366 days before an election, versus 364, presents a different threat of quid pro quo corruption. *See Zimmerman*, 1:15-cv-628-LY, Findings of Fact and Conclusions of Law, Dkt. 67, at 12) (concluding the City "did not present evidence or argument to show how a contribution made seven months before election day presents a different threat of quid pro quo corruption than a contribution made three months before election day"). Now and previously in *Zimmerman*, the City relies exclusively on Butts's testimony. His testimony in *Zimmerman*, which the City adopts and relies on again in this case, was found lacking by this Court and the Fifth Circuit. The Fifth Circuit explained that the City "must justify the limit with some evidence of actual corruption or its appearance." *Zimmerman*, 881 F.3d at 391–92. Once again, the City has not presented evidence of actual corruption or its appearance. *See id.* Furthermore, the Fifth Circuit highlighted that while "*Buckley* and the long line of cases following it make clear that the dangers of large contributions 'are neither novel nor implausible,' there is not the same well-trodden path regarding the dangers of contributions made far in time from an election." *Id.* (quoting *Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 379 (2000)). Since *Zimmerman*, nothing has changed other than the City extending the fundraising period from six months to one year. The circumstances have not materially changed, as demonstrated by the City's continued reliance on Butts' testimony from eight years ago, and the City's evidence to support its interest in instituting a blackout period—that was deemed insufficient by this Court and the Fifth Circuit—has not increased in quantity or quality.

Accordingly, the Court finds that the blackout period, as set out in City Code § 2-2-7(B), (G), is unconstitutional under the First Amendment, and the Court will award Plaintiffs nominal damages. The Court will order the parties to meet and confer to reach an agreement on the amount of nominal damages that shall be awarded each to Virden and Clark.

## IV. CONCLUSION

**IT IS ORDERED** that the City's motion for summary judgment, (Dkt. 66), is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims for injunctive and declaratory relief are dismissed as moot. Plaintiffs' claims for nominal damages survive.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for summary judgment, (Dkt. 67), is **GRANTED IN PART** and **DENIED IN PART**. The Court declares that the City's blackout period, as set out in City Code § 2-2-7(B), (G), is unconstitutional and awards nominal damages to Plaintiffs. Plaintiffs' request for injunctive relief is denied.

**IT IS FURTHER ORDERED** that Plaintiffs' opposed motion to supplement summary judgment record, (Dkt. 76), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to expedite, (Dkt. 76), is **MOOT**.

**IT IS FINALLY ORDERED** that the parties shall meaningfully meet and confer and reach an agreement on the amount of nominal damages that shall be awarded each to Virden and Clark and file an agreed proposed final judgment **on or before September 13, 2023**.

**SIGNED** on August 30, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE